DECISION
{¶ 1} Relator, Kathryn Ward, filed this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission"), to vacate its order denying relator's application for permanent total disability compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On June 24, 2005, the magistrate rendered a decision, including findings of fact and conclusions of law, and therein recommended that this court deny the requested writ of mandamus. (Attached as Appendix A.) Relator timely filed objections to the magistrate's decision, which are unopposed and are now before the court.
 {¶ 3} In her first objection, relator contends that the magistrate erred in concluding that Dr. Fitz's report is unambiguous. She argues, as she did before the magistrate, that Dr. Fitz's report is ambiguous because he opined that relator is capable of sustained performance of sedentary work so long as she is permitted to change positions "frequently." She argues that, without clarification of what Dr. Fitz means by "frequently," his report is ambiguous and therefore cannot be considered "some evidence" supporting the order of the commission.
 {¶ 4} For support of this argument, relator directs the court's attention to the case of State ex rel. Eberhardt v. Flxible Corp.
(1994), 70 Ohio St.3d 649, 640 N.E.2d 815. However, that case merely stands for the proposition that, "[w]here a physician renders an ambiguous opinion regarding a claimant's medical condition but thereafter clarifies the ambiguity, the Industrial Commission may not revive the ambiguity as a basis for rejecting the physician's opinion." Id. at paragraph two of the syllabus. Eberhardt sheds no light on the issue of whether the word "frequently," as used by Dr. Fitz, is ambiguous. We conclude, however, that the word is not ambiguous.
 {¶ 5} The case of State ex rel. Wrobleski v. Huntington Bancshares,Inc., 10th Dist. No. 02AP-654, 2003-Ohio-1111, is germane to the issue before us. In that case, the commission denied the claimant's request for PTD compensation based on a report by the same Dr. Fitz, in which the doctor opined that the claimant "can perform sedentary work activity but she would need to be allowed to change positions frequently." The magistrate reached the conclusion, which this court adopted, that Dr. Fitz's report, as a whole, was sufficiently clear, and that there is no requirement that a physician explicitly state a specific number of minutes that a claimant can, for instance, stand, or, in relator's case, remain in one position.
 {¶ 6} In Wrobleski we adopted the magistrate's conclusion that, "[a] medical report with ranges rather than specific estimates is not fatally defective, although a party can reasonably argue at hearing that the report was weak for that reason." Id. at ¶ 60. The word "frequently" is not a term of art, but a word of common usage that means, "happening at short intervals" or "often repeating or occurring." (See Appx. A, ¶ 26, infra.) Thus, the word signifies a range of time during which relator is capable of performing the duties associated with sedentary work without changing positions. The report as a whole indicates that, so long as relator is given the opportunity to change positions at short intervals, she is physically capable of performing such work.
 {¶ 7} Under Wrobleski, relator was permitted to argue to the commission that it should not rely on Dr. Fitz's report due to the report's inclusion of a range rather than specific estimates; however, the commission's rejection of this argument and reliance on the report do not represent an abuse of discretion that requires correction through the extraordinary writ of mandamus. Accordingly, relator's first objection is overruled.
 {¶ 8} In her second objection, relator argues that the magistrate erred in concluding that the commission did not abuse its discretion in refusing to permit relator to depose Dr. Fitz regarding the meaning of the word "frequently." Because we have determined that Dr. Fitz's use of this word did not create an ambiguity in his report, we agree with the magistrate's conclusion that the commission acted within its discretion in refusing to grant relator leave to depose Dr. Fitz. For this reason, we overrule relator's second objection.
 {¶ 9} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently and correctly discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Klatt and French, JJ., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Kathryn Ward, :
 Relator, :
v. No. 05AP-28 :
Dorman Products and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
 Respondents. :

MAGISTRATE'S DECISION
Rendered on June 24, 2005
Butkovich, Schimpf, Schimpf Ginocchio Co., L.P.A., Joseph A.Butkovich and Robert E. Hof, for relator.
Jim Petro, Attorney General, and Derrick L. Knapp, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 10} Relator, Kathryn Ward, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to said compensation. In the alternative, relator requests that this court order the commission to vacate its order denying her application for PTD compensation, grant her motions to depose Thomas Nimberger and William R. Fitz, M.D., and then rehear and reconsider her PTD application.
Findings of Fact:
 {¶ 11} 1. Relator sustained a work-related injury on November 20, 1985, and her claim has been allowed for: "Low back strain; right hip and groin injury; pre-existing degenerative arthritis of the lower back and right hip region." Relator has not returned to work following her injury.
 {¶ 12} 2. On June 20, 1999, relator filed an application for PTD compensation. On her application, relator indicated that she had graduated from high school, could read, write and perform basic math, was 55 years old, and had prior work experience as a hair dresser and an auto parts supplier.
 {¶ 13} 3. Relator submitted the May 5, 1999 report of Peter J. Fagerland, D.C., who opined that she was permanently and totally disabled and not capable of finding or sustaining any form of remunerative employment. Relator also submitted the May 31, 1999 vocational evaluation performed by Jennifer J. Stoeckel, Ph.D., who opined that given her age, the fact that she has not been gainfully employed for ten years, her lack of transferable work skills, her low average intellectual ability, and her medical impairment, she was permanently and totally disabled.
 {¶ 14} 4. Relator was also examined by William R. Fitz, M.D., who issued a report dated October 4, 1999. After providing his physical findings, Dr. Fitz opined that relator had reached maximum medical improvement ("MMI"); assessed a ten percent whole person impairment for the allowed conditions; indicated that relator could not return to her former position of employment, but that she could return to sedentary work activity given the ability to change positions regularly. Dr. Fitz completed an occupational activity assessment wherein he indicated that relator could sit for three to five hours, stand and walk for zero to three hours; lift, carry, push, pull or otherwise move up to ten pounds for zero to three hours; occasionally climb stairs and reach at knee level; frequently reach overhead and at waist level; never climb ladders, use foot controls with her right leg, crouch, stoop, bend, kneel, or reach at floor level; and was unrestricted in her ability to use foot controls with her left leg and could handle objects. Dr. Fitz noted that her limitations were based upon her limited lumbar range of motion.
 {¶ 15} 5. On October 27, 1999, relator filed a motion to depose Dr. Fitz apparently on the basis that his report and the report of Dr. Fagerland were in substantial disparity. (This motion is not contained in the record before this court.)
 {¶ 16} 6. The motion to depose Dr. Fitz was heard before a staff hearing officer ("SHO") on February 1, 2000, and denied for the following reasons:
Following review of the claim file and all relevant evidence, it is the finding of the Staff Hearing Officer that the claimant's motion is unreasonable because no existence of substantial disparity between reports of Dr. Fagerland and Dr. Fitz. [Sic.] The Staff Hearing Officer finds that Dr. Fitz considered the allowed right hip conditions when he examined the claimant on 10/4/99. Dr. Fitz assigned a 0% of impairment to right hip. The Staff Hearing Officer finds that you can't compare Dr. Fritzhand [sic] report on right hip with Dr. Fagerland because Dr. Fagerland gives no percentage for allowed conditions, considered non-medical factors in opining claimant was permanently and totally disabled.
 {¶ 17} 7. On March 27, 2000, relator filed a motion to depose the commission's vocational expert, Thomas Nimberger, for the following reasons:
* * * Injured worker submits that there is a substantial disparity between the reports of Dr. Jennifer Stoeckel and that of Mr. Thomas Nimberger. The injured worker further respectfully submits that the jobs listed in response to question #1 are outside the injured worker's physical abilities. The injured worker further respectfully notes that the vocational expert does not take into consideration the injured worker's age as a factor in determining whether she is permanently and totally disabled.
 {¶ 18} 8. Relator's motion was heard before an SHO on March 27, 2000 and was denied for the following reasons:
Mr. Nimberger performed an employability assessment of the claimant at the request of the Industrial Commission with respect to the questions raised by the claimant's permanent total disability application. Mr. Nimberger evaluated the claimant's employment options considering the claimant's medical restrictions related to the allowed conditions as presented by the examining physicians. Mr. Nimberger considered the impact of the non-medical disability factors in evaluating the claimant's ability to perform the suggested employment options. The claimant's assertion that the suggested employment options are outside of the claimant's capabilities is appropriately the subject of argument at hearing on the merits of the application. The Staff Hearing Officer finds that such assertion is not properly the subject of a deposition.
 {¶ 19} 9. Thereafter, relator's application for PTD compensation was heard before an SHO on April 25, 2000, and resulted in an order denying the application. The SHO relied upon the medical report of Dr. Fitz and concluded that relator could perform sedentary work activity within the restrictions and abilities noted by Dr. Fitz in his report. The SHO then reviewed the vocational evidence and conducted its own analysis as follows:
The Staff Hearing Officer finds that the claimant is 56 years of age, has an [sic] twelfth grade education with the ability to read, write and do basic math and has previous work experience as a cosmetologist and as an order picker and filler.
The Staff Hearing Officer finds that the claimant's age of 56 would not be a detriment to the claimant engaging in entry level employment activity which is sedentary in nature. The Staff Hearing Officer finds that the claimant has 9 more years of employment in which she can engage in retraining for entry into the workforce or for working at an entry level sedentary employment position. The Staff Hearing Officer finds that the claimant's age of 56 is not a barrier to employment.
The Staff Hearing Officer finds that the claimant's twelfth grade education as well as her ability to read, write and do basic math as well as her ability noted on formal testing indicates that the claimant's educational background is a positive factor regarding the claimant engaging in entry level sedentary employment activity or for retraining to engage in sedentary work activity.
The Staff Hearing Officer finds that the claimant's past work experience as an order filler and as a beautician has not provided the claimant with any skills which would be transferable to sedentary work activity and therefore is not a positive factor with regard to the claimant's ability to engage in sustained remunerative work activity.
The Staff Hearing Officer finds that the claimant could engage in academic retraining or other brief skill enhancement to engage in entry level sedentary work activity if such retraining was necessary. The Staff Hearing Officer finds however that there are a number of entry level employment activities which the claimant could engage without retraining in which are within the restrictions and abilities noted by Dr. Fitz. The Staff Hearing Officer finds that such jobs include working as a surveillance system monitor, dispatcher, receptionist and order clerk.
Based upon the above findings, the Staff Hearing Officer finds that the claimant would be able to engage in sustained remunerative work activity and is not permanently and totally disabled.
 {¶ 20} 10. Thereafter, relator filed the instant mandamus action in this court
Conclusions of Law:
 {¶ 21} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 22} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 23} Relator raises three arguments in this mandamus action: (1) that the commission abused its discretion when it relied upon the medical report of Dr. Fitz; (2) that the commission abused its discretion when it denied relator's request to depose Dr. Fitz; and (3) that the commission abused its discretion when it denied relator's application for PTD compensation failing to adequately explain how relator could realistically engage in any employment options. For the reasons that follow, this magistrate finds that relator is not entitled to a writ of mandamus.
 {¶ 24} First, relator contends that the medical report of Dr. Fitz is ambiguous and cannot constitute some evidence upon which the commission could reasonably rely. It is undisputed that equivocal medical opinions do not constitute "some evidence" upon which the commission can rely.State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 25} Relator contends that Dr. Fitz'ss medical report was ambiguous because, when he noted that relator could perform sedentary work activity given the ability to change positions frequently, he gave no explanation as to what he meant by use of the term "frequently."
 {¶ 26} First, the word "frequently" is defined in Ohio Administrative Code relative to applications for PTD compensation and the different classifications of physical demands of work to mean an activity or condition existing from one-third to two-thirds of the time. The word "frequent" is defined in Webster's Ninth New Collegiate Dictionary (1987) 492 as "happening at short intervals: often repeated or occurring." The word "frequently" is defined as "at frequent or shot intervals." Id. The magistrate finds that this term is not difficult to understand and did not render Dr. Fitz'ss report to be ambiguous. Furthermore, this court recently addressed the use of similar wording that was utilized by the doctor. In State ex rel. Wrobleski v. Huntington Bancshares Inc.,
Franklin App. No. 02AP-654, 2003-Ohio-1111, at ¶ 60, Dr. Fitz had opined that the claimant could perform sedentary work activity, but would need to be allowed to change positions frequently. This court found Dr. Fitz'ss report, as a whole, was sufficiently clear that the claimant could perform some walking and standing during the day in connection with performing sedentary work. Id.
 {¶ 27} Relator further contends that the commission abused its discretion by denying her motion to depose Dr. Fitz. R.C. 4123.09
provides that parties may take depositions in workers' compensation claims with permission from the Ohio Bureau of Workers' Compensation or as ordered by the commission. Ohio Adm. Code 4121-3-09(A)(6)(c) sets forth the procedure for requesting a deposition and states that the hearing administrator will grant a reasonable request. Ohio Adm. Code4121-3-09(A)(6)(d) provides the factors to be considered when determining whether to grant a motion to depose. The rule provides as follows:
* * * [W]hen determining the reasonableness of the request for deposition or interrogatories the hearing administrator shall consider whether the alleged defect or potential problem raised by the applicant can be adequately addressed or resolved by the claims examiner, hearing administrator, or hearing officer through the adjudicatory process within the commission or the claims process within the bureau of workers' compensation.
 {¶ 28} Later, in State ex rel. Cox v. Greyhound Food Mgt., Inc.,95 Ohio St.3d 353, 2002-Ohio-2335, the Supreme Court of Ohio added two other criteria for hearing officers to consider when determining to grant a motion for deposition. The court determined that the following questions should be asked: (1) does a defect exist that can be cured by deposition; and (2) is the disability hearing an equally reasonable option for resolution? Id.
 {¶ 29} In the commission's order denying relator's motion to depose Dr. Fitz, the SHO found that, contrary to relator's argument, Dr. Fitz did consider the allowed right hip conditions when he examined relator; however, Dr. Fitz had assigned a zero percent impairment for the right hip. The DHO found further that one could not compare Dr. Fitz'ss report relative to the right hip condition with Dr. Fagerland's report because Dr. Fagerland did not give a percentage for the allowed conditions and had considered nonmedical factors in opining that relator was permanently and totally disabled.
 {¶ 30} As stated previously, relator's motion to depose Dr. Fitz has not been included as part of the record; accordingly, given the presumption of regularity of commission proceedings, the magistrate finds that the rationale provided by the SHO for denying the motion to depose Dr. Fitz complies with the law and the magistrate does not find an abuse of discretion in this regard.
 {¶ 31} Finally, relator argues that the commission's analysis relative to the nonmedical disability factors violates Noll, and this court should award relator compensation pursuant to Gay. The magistrate disagrees.
 {¶ 32} The SHO determined that relator's age of 56 would not be a detriment to her engaging in entry level sedentary employment. The SHO also found that relator's 12th grade education, coupled with her ability to read, write and perform basic math was a positive factor regarding her ability to engage in sedentary employment or retrain for sedentary employment. The fact that relator's past work experience did not provide her with any transferable skills was considered not to be a positive factor. However, upon finding that relator could engage in academic retraining or other brief skill enhancement, the commission determined that relator could engage in certain jobs such as "surveillance system monitor, dispatcher, receptionist and order clerk."
 {¶ 33} Relator contends that because she scored below average for clerical perception on Dr. Nimberger's test that she cannot perform those jobs. This magistrate disagrees. First, the commission is not required to list specific jobs which relator could perform. Second, the commission is aware of the tasks involved in various jobs and can make a determination whether someone would be capable of performing that job or not. Third, none of the jobs listed by the commission are specifically clerical in nature even if they do, at times, require one to utilize certain electronic devices. Fourth, the magistrate finds the commission's explanation and analysis satisfy the requirements of Noll.
 {¶ 34} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and this court should deny relator's request for a writ of mandamus.