DECISION
{¶ 1} In this original action, relator, Delmar Collins, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total disability ("PTD") compensation and enter a new order granting said compensation.
 {¶ 2} Relator's claim stems from a work-related injury suffered on February 4, 1983. He was allowed a claim for "epididymitis; diffused disc bulging at L3-4 and L4-5 and grade 1 spondylolisthesis L5-S1; right knee sprain; patella chondromalacia; tibial plateau chondromalacia; torn medial meniscus right knee; depression."
 {¶ 3} On October 18, 2002, relator filed a claim for PTD compensation along with medical reports of Peter J. Fagerland, D.C., and Jennifer Stoeckel, Ph.D. Dr. Fagerland noted in his physical findings that relator was "permanently and totally disabled and is unable to perform any type of remunerative employment whatsoever." Dr. Stoeckel conducted a psychological evaluation of relator. She concluded that relator is at the first grade level for reading and spelling and at the fourth grade level for math. Dr. Stoeckel further noted that, based upon relator's IQ level of 66, relator is mildly mentally retarded. Additionally, relator is functionally illiterate and has been out of the workforce for 20 years. At one time, relator attempted to rehabilitate himself at Jewish Vocational Services but was unsuccessful. Dr. Stoeckel concluded that relator lacks transferable skills and is negatively impacted by his depression.
 {¶ 4} Relator underwent a second set of examinations by Ron M. Koppenhoefer, M.D., and Donald L. Brown, M.D. Dr. Koppenhoefer issued a report on his physical examination on January 31, 2003. His physical findings revealed a 22 percent whole person impairment. Dr. Koppenhoefer opined that relator was capable of sedentary work, provided he was given the opportunity to change from standing to sitting often and avoided repetitive bending and stooping.
 {¶ 5} Dr. Brown conducted a psychiatric evaluation of relator and issued his report on February 5, 2003. Dr. Brown noted that relator was coherent, able to comprehend and reason, handled the interpersonal phase of the exam well, and performed well overall given his intellectual limitations. Dr. Brown also noted that relator self-reported his conditions, had a dependant personality, and suffered from depression. However, Dr. Brown opined that relator's depression would not hinder his employment abilities and assessed him with a 25 percent whole person impairment.
 {¶ 6} A vocational assessment was submitted by Deborah Lee, MRC, CRC, LPC, in light of the reports by Drs. Koppenhoefer and Brown. In the report, Lee listed jobs that could be held by relator, including: assembler and fabricator, hand packager, cleaner/housekeeper, order filler, and machine feeder offbearer.
 {¶ 7} On February 27, 2004, a staff hearing officer ("SHO") heard relator's application for PTD compensation. The SHO relied upon the reports submitted by Drs. Koppenhoefer and Brown and considered Lee's assessment when she issued her determination. The SHO then issued her independent finding that, based upon the reports submitted and pertinent non-medical factors, relator would be able to perform sedentary and light-duty employment.
 {¶ 8} Relator filed a mandamus action with this court alleging that the commission (1) abused its discretion by relying on Lee's vocational assessment report because the report was equivocal and internally inconsistent; and (2) abused its discretion when it relied on Dr. Brown's report because it was internally inconsistent.
 {¶ 9} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. The magistrate rendered a decision on February 6, 2006, including findings of fact and conclusions of law. (Attached as Appendix A.) Based upon her application of the case law to these facts, the magistrate found that Dr. Brown and Lee's reports properly constituted "some evidence" upon which the commission could rely.
 {¶ 10} The magistrate noted that the standard typically applied to equivocal reports does not apply to this case because the report in question is vocational, not medical. The commission is the expert on vocational issues. The obligation ultimately rests on the commission to decide what vocational evidence to consider and the weight to be given when rendering a final decision. See State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266. Therefore, the commission did not err in relying on Lee's report.
 {¶ 11} The magistrate also noted that neither the vocational experts nor the commission are required to list jobs that the injured worker can perform based upon their final conclusions. The only determination that must be made is whether relator is capable of sustained remunerative employment. Furthermore, relator did not present any evidence to substantiate his claim that he was incapable of performing the jobs listed in Lee's report.
 {¶ 12} Regarding the report by Dr. Brown, relator argued that, because he was assessed with a 25 percent psychological impairment, Dr. Brown was required to list restrictions pertaining to said impairment. The magistrate held that there is no case law to substantiate relator's argument and that Dr. Brown's report constitutes "some evidence" upon which the commission could rely. Accordingly, the magistrate recommended that this court deny relator's request for writ of mandamus.
 {¶ 13} Relator filed objections to the magistrate's decision,[1] rearguing the exact same points effectively and competently addressed by the magistrate.[2] Within his objections, relator, for the first time, adds that the commission is required to explain why it found that relator could perform the jobs listed by the commission. We find this assertion to be erroneous.
 {¶ 14} When rendering a determination on PTD compensation, the commission must consider the factors set forth in State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.Stephenson requires the commission to take into consideration all physical, psychological and sociological conditions, as well as the claimant's age, education and work record. The commission must also identify the evidence relied upon and provide a comprehensive explanation and reasoning for the final determination. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. Relator mistakenly interprets these cases to mean that the commission must explain how, given his non-medical factors, he can perform the specific jobs listed. NeitherStephenson nor Noll requires that degree of specificity. The commission here properly identified relator's non-medical factors and the impact they would have on future employability.
 {¶ 15} Noll does not require lengthy and detailed explanations. In State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315, at 321, the Supreme Court of Ohio stated that "Noll
quite clearly stands for the proposition that the commission must explain, in its orders, how the Stephenson factors, if pertinent, support the commission's determination granting or denying the requested benefits." In State ex rel. Singleton v.Indus. Comm. (1994), 71 Ohio St.3d 117, at 119, the Supreme Court of Ohio held that "[t]he adequacy of an order's reasoning often turns on the consistency between the ultimate decision and the factors cited in support thereof."
 {¶ 16} We find that the commission's order contains the requisite consistency. The commission first noted that relator's age is an asset in obtaining employment. Although the commission went on to find that relator's academic functioning would be somewhat of an obstacle to future employment options, relator was capable of learning new skills through verbal instruction or demonstration. He also possesses some skills with hand tools.
 {¶ 17} We find that the commission satisfactorily explained the reasoning for its holding. The commission is not required to explain why it concluded he could perform each of the jobs listed. As already stated, neither vocational experts nor the commission are required to provide a list of suitable occupations. Accordingly, we find that further explanation of the commission's decision is not necessary.
 {¶ 18} Pursuant to Civ.R. 53(E)(4), we have conducted a full review of the magistrate's decision, relator's objections and all submitted memoranda. For the reasons stated, relator's objections are overruled and we adopt the magistrate's recommendation. We deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Klatt, P.J., and Brown, J., concur.
[1] Relator's objections mistakenly attached a magistrate's decision from an unrelated case.
[2] Relator asserts the same argument as before regarding Dr. Brown's report. This time, however, relator alleges that Dr. Brown's report is internally inconsistent because Dr. Brown assessed relator with a Level III impairment pursuant to the Fourth Edition of the AMA Guidelines. Dr. Brown went on to describe relator's impairment as "moderate" but failed to list relator's limitations that justify a Level III impairment. Relator further argues that the AMA Guidelines describes a Level III impairment as a moderately severe level of impairment, thus rendering Dr. Brown's report internally inconsistent. We find this argument to be more semantics than substance and does not rise to the level of an internal inconsistency and is not dispositive to this case.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Delmar Collins, : Relator, : : No. 05AP-862 Almar Realty Corporation and : Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 16, 2006 Butkovich, Crosthwaite Gast Co., L.P.A., Daryl A.W.Crosthwaite and Stephen P. Gast, for relator.
Jim Petro, Attorney General, and Sue A. Zollinger, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 19} Relator, Delmar Collins, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.
Findings of Fact:
 {¶ 20} 1. Relator sustained a work-related injury on February 4, 1983, and his claim has been allowed for "epididymitis; diffused disc bulging at L3-4 and L4-5 and grade 1 spondylolisthesis L5-S1; right knee sprain; patella chondromalacia; tibial plateau chondromalacia; torn medial meniscus right knee; depression."
 {¶ 21} 2. On October 18, 2002, relator filed an application for PTD compensation.
 {¶ 22} 3. In support of his application, relator submitted the medical report of Peter J. Fagerland, D.C., dated August 19, 2002. After providing his physical findings, Dr. Fagerland opined as follows:
* * * Based on the allowed conditions and the AMA Guides to Evaluation of Permanent Impairment, Fifth Edition, I find the following: It is my professional opinion that based upon the patient's subjective complaints of pain, discomfort, and muscle weakness, in addition to my objective findings of muscle spasm, decreased range of motion, loss of muscle strength, and positive orthopaedic findings the patient is permanently and totally disabled and is unable to perform any type of remunerative employment whatsoever.
 {¶ 23} 4. Dr. Fagerland also completed a physical capacity evaluation wherein he indicated that relator could lift and/or carry up to five pounds frequently; stand and/or walk for three hours during an eight hour day and for one hour without interruption; sit for eight hours in an eight hour day and for one hour without interruption; precluded relator from any climbing, kneeling, crouching, stooping and crawling; indicated that relator should avoid heights, temperature extremes, humidity, and vibration; and indicated that there should be no repetitive bending, lifting, twisting and no prolonged sitting/standing.
 {¶ 24} 5. Relator also submitted a psychological evaluation completed by Jennifer J. Stoeckel, Ph.D., dated September 12, 2002. Dr. Stoeckel administered various tests and determined that relator is at the first grade level for reading and spelling and at the fourth grade level for arithmetic. Dr. Stoeckel concluded that relator's IQ was 66 which placed him at the mild MR range for intellectual functioning. Ultimately, Dr. Stoeckel opined that relator would not be able to compete at entry level, sedentary or light duty positions; that although he is a younger individual, he has been out of work for nearly 20 years; he is functionally illiterate; his attempt at rehabilitation with Jewish Vocational Services was unsuccessful; he is significantly below average in special reasoning, perceptional speed and accuracy; he lacks transferable skills; and his depression negatively impacts him.
 {¶ 25} 6. Relator was examined by Ron M. Koppenhoefer, M.D., who issued a report dated January 31, 2003. After noting his physical findings, Dr. Koppenhoefer assessed a 22 percent whole person impairment and concluded as follows:
Based on the allowed conditions in this claim, I believe Mr. Collins could perform work related activities. He would be limited to sedentary work activities with the ability to change his position from sit to stand. It is noted that his fusion is solid, and I believe he could also perform light duty work if he could avoid repetitive bending and stooping activities.
It is noted he does have non-associated medical problems which could interfere with his ability to work. These problems relate to his history of non-Hodgkin's lymphoma.
 {¶ 26} 7. Relator was also examined by Donald L. Brown, M.D., relative to his psychiatric condition. Dr. Brown issued a report dated February 5, 2003. Dr. Brown noted relator's self-reporting of his conditions, yet noted that, in his opinion, relator handled the interpersonal aspect of the examination well, relator's speech was coherent, spontaneous, and goal directed. Dr. Brown noted no evidence of thought disorder nor a history of hallucinations or delusions. He noted that relator's affect was within the normal range and that there was no objective evidence of anxiety or depression. Dr. Brown noted that relator seems somewhat focused on his pain and that he exhibits dependent personality traits which is consistent with long-standing feelings of insecurity and/or inadequacy. Dr. Brown noted that relator was oriented to person, place, time, and purpose of the examination, and accepted the results of the testing performed by Dr. Stoeckel. Dr. Brown noted further that relator is able to comprehend and reason within the constraints of his limited intellectual capacity; relator is concrete in his thinking, but not insightful or psychologically minded. He noted further that relator's attention span and ability to concentrate were within normal limits and that his memory for recent and remote events was intact. Dr. Brown concluded that relator does exhibit some dependent personality traits and that he has issues adjusting to a variety of different adult relationships. He noted further that relator has been focused on his pain and that relator received treatment for his depression which, in Dr. Brown's opinion, has been stabilized with medication. Ultimately, Dr. Brown assessed a 25 percent whole person impairment and opined that relator's depression would not prevent him from returning to his former position of employment or other forms of employment for which he was otherwise qualified. He stated further that he believed that relator's impairment would cause him mild impairments in activities of daily living, social functioning, concentration, persistence, and pace, and that it could cause moderate limitations in adaptation.
 {¶ 27} 8. An employability assessment report was prepared by Deborah Lee, MRC, CRC, LPC. Based upon the medical reports of Drs. Koppenhoefer and Brown, Ms. Lee identified the following jobs as ones relator could perform:
 Assembler Fabricators Hand Packagers Cleaners/Housekeepers Order Fillers Machine Feeders/Offbearers
 {¶ 28} Ms. Lee noted that relator's age of 46 should not impact his ability to meet basic work demands, that based upon the IQ testing performed by Dr. Stoeckel, relator is academically suited for manual labor, and he is not a candidate for academic or vocational training.
 {¶ 29} 9. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on February 27, 2004, and resulted in an order denying the requested compensation. The SHO relied upon the report of Dr. Koppenhoefer and concluded that relator could perform sedentary employment, provided that he have the opportunity to change positions frequently with a sit/stand option, and that he could perform light duty work provided that he avoid repetitive bending and stooping. The SHO also relied upon the medical report of Dr. Brown. Thereafter, the SHO noted the medical report of Dr. Stoeckel and accepted the testing results which she provided. Thereafter, the SHO considered the employability assessment prepared by Ms. Lee and noted that Ms. Lee had accepted the testing results of Dr. Stoeckel as well. The SHO then went on to conduct her own vocational analysis as follows:
The Staff Hearing Officer finds that the injured worker is 46 years of age, has an 11th grade formal education, and work experience as a building maintenance repairer. The Staff Hearing Officer finds that the injured worker's age is an asset which would enable him to adapt to new work rules, processes, methods, procedures and tools involved in a new occupation. The Staff Hearing Officer further finds that the injured worker's education does not accurately reflect his academic functioning. Based on the testing results presented by Dr. Stoeckel, the Staff Hearing Officer finds that the injured worker reads at a 1st grade equivalent, spells at a 1st grade equivalent, and performs mathematics at a 4th grade equivalent. The Staff Hearing Officer further finds that based on the IQ testing presented by Dr. Stoeckel, the injured worker would have difficulty learning new skills other than through verbal instruction or demonstration. The Staff Hearing Officer further finds that the injured worker was only employed for a period of approximately two (2) years at the time he suffered this industrial injury. As a result of that employment, the injured worker acquired skills in using hand tools. The Staff Hearing Officer finds that considering the injured worker's age, academic abilities as demonstrated through testing, and work experience in conjunction with his ability to perform sedentary and limited light duty employment, the injured worker would be capable of performing the occupations identified in the vocational report of Ms. Lee, such as: assembler and fabricator, hand packager, cleaner, order filler, and machine feeder/offbearer. Accordingly, the injured worker's Application for Permanent Total Disability Compensation is denied.
 {¶ 30} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 31} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that he has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 32} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 33} Relator presents two issues for review by this court: first, relator contends that the commission abused its discretion when it relied upon the employment assessment of Ms. Lee because that assessment was equivocal and internally inconsistent; second, relator contends that the commission abused its discretion when it relied upon the report of Dr. Brown which relator contends was internally inconsistent. For the reasons that follow, this magistrate finds that relator's arguments lack merit.
 {¶ 34} It is undisputed that equivocal or internally inconsistent medical opinions do not constitute "some evidence" upon which the commission may rely. State ex rel. Eberhardt v.Flxible Corp. (1994), 70 Ohio St.3d 649. Equivocation occurs when a doctor renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id. at 657. A medical report can be so internally inconsistent that it cannot serve as some evidence supporting a commission decision. State ex rel.Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445; State ex rel.Taylor v. Indus. Comm. (1995), 71 Ohio St.3d 582.
 {¶ 35} Relator contends that Ms. Lee's vocational report is equivocal and internally inconsistent. Relator points to certain jobs which Ms. Lee identified as being suitable for relator which are actually medium strength jobs and outside of relator's physical abilities. Relator contends that the commission should have found that Ms. Lee's opinion that relator could return to sedentary and light duty work was inconsistent with her employability options and jobs listed as available to relator.
 {¶ 36} It is understood that the commission has the discretion to consider or not consider vocational evidence and has the discretion to accept one vocational report while rejecting another vocational report. See State ex rel. Jacksonv. Indus. Comm. (1997), 79 Ohio St.3d 266. Further, the Supreme Court of Ohio has indicated that to bind the commission to a rehabilitation report's conclusions would make the rehabilitation division, and not the commission, the ultimate evaluator of disability, contrary to Stephenson, supra. See State ex rel.Singleton v. Indus. Comm. (1994), 71 Ohio St.3d 117.
 {¶ 37} In the present case, the commission did note both vocational reports, Dr. Stoeckel's and Ms. Lee's. Further, the commission accepted Dr. Stoeckel's conclusions as to relator's intellectual abilities. The SHO then noted that relator's age was an asset which would enable him to adapt to new work rules, processes, methods, procedures, and tools involved in a new occupation. The SHO accepted Dr. Stoeckel's conclusions that relator reads at a first grade equivalent, spells at a first grade equivalent, and performs mathematics at a fourth grade equivalent. The SHO went on to note that the only skills which relator had acquired were skills in using hand tools. Based upon his age, his limited academic abilities, and his work experience with hand tools, the commission concluded that, within his physical restrictions, relator could perform some of the occupations identified in the report of Ms. Lee. The commission did not cite all of the jobs listed by Ms. Lee.
 {¶ 38} With regard to Ms. Lee's report, the magistrate notes first that the standards associated with equivocal opinions have been limited to medical reports rendered by physicians. Because the commission is the expert on vocational matters, those same standards have not been extended to include vocational reports prepared by vocational experts. The commission is free to accept the findings of a vocational report while rejecting the ultimate conclusion. Relator contends that some of the jobs Ms. Lee listed were outside of his physical capabilities; however, relator does not present any evidence to substantiate that fact. The commission noted that relator could perform some of the jobs listed by Ms. Lee, such as: "Assembler Fabricators[,] Hand Packagers[,] Cleaners/Housekeepers[,] Order Fillers" and "Machine Feeders/Offbearers." Without evidence that any of those jobs are outside of relator's physical capabilities, this magistrate cannot say that the commission abused its discretion by listing those jobs. As stated previously, the commission did not list every job identified by Ms. Lee either. Further, even though vocational evaluators list jobs which they believe a claimant can perform, the commission is not required to list any jobs which it believes a claimant can perform.
 {¶ 39} In the present case, the commission accepted findings by both vocational evaluators: Dr. Stoeckel and Ms. Lee. However, the commission rejected the ultimate conclusion of Dr. Stoeckel who had determined that relator was permanently and totally disabled. Relator has not demonstrated that this constituted an abuse of discretion.
 {¶ 40} Relator also contends that the report of Dr. Brown is internally inconsistent. Relator notes that Dr. Brown indicated that, from a psychological standpoint, he had a 25 percent impairment. However, relator points out that Dr. Brown did not list any restrictions relative to that impairment. Relator's argument appears to be that, if a doctor finds that a claimant has a 25 percent psychological impairment, the doctor must list certain restrictions relative to that impairment. Relator also notes his self-reporting of matters such as the fact that he is tense and nervous all the time, has crying spells, and problems with his memory and reading. The magistrate notes that Dr. Brown accurately noted relator's self-reporting and then noted that relator did exhibit some dependent personality traits and that his review of the record demonstrates that relator has had issues adjusting to a variety of different adult relationships. Dr. Brown noted that relator was somewhat focused on his pain and that he has received treatment for his depression. Dr. Brown further noted that relator's depression appears to be stabilized now with medication and that he would have mild impairments in activities of daily living, social functioning, concentration, persistence, and pace. He noted further that relator's condition could cause (not "would" cause) moderate limitations and adaptations.
 {¶ 41} Upon review, this magistrate does not find the report of Dr. Brown to be internally inconsistent. Further, the magistrate finds no case law to substantiate relator's argument that where a doctor finds a 25 percent psychological impairment, the doctor must give restrictions. In the present case, Dr. Brown noted those areas where he believed relator would have some difficulties and areas where he believed relator could have some difficulties. In spite of those difficulties, Dr. Brown was still of the opinion that relator's allowed condition of depression, which Dr. Brown believed was stabilized by medication, would not preclude him from working. Relator simply has not shown that Dr. Brown's report was internally inconsistent or that the commission abused its discretion by relying upon it.
 {¶ 42} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the vocational report of Ms. Lee was equivocal and internally inconsistent nor has he established that the psychological report of Dr. Brown is internally inconsistent. As such, relator has not demonstrated that the commission abused its discretion in relying upon those reports, and ultimately concluding that he is capable of some sustained remunerative employment and in denying his application for PTD compensation. As such, the magistrate would deny relator's request for a writ of mandamus.