DECISION
{¶ 1} Relator, Beverly L. Lynch, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied her permanent total disability ("PTD") *Page 2 
compensation and to order the commission to find that she is entitled to said compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator asserts three objections: (1) the magistrate erred when she found the commission's excessive reliance on relator's ability to perform daily life activities to support the denial of PTD was not an abuse of discretion; (2) the magistrate erred when she went beyond the four corners of the commission's order to find justification for the commission's decision to deny PTD; and (3) the magistrate erred when she found that the commission's conclusion that relator could perform sedentary work from within her home did not constitute an abuse of discretion, because there was no evidence of a viable market for in-home keyboarding positions compatible with all of relator's physical and psychological limitations.
 {¶ 4} With regard to her first objection, relator argues that the magistrate and commission erred when they found relator's ability to perform daily life activities supported the denial of PTD. Relying on Dr. William Schirado, the Staff Hearing Officer ("SHO") found relator could perform basic daily activities within the home and was able to drive independently as needed for basic activities, such as shopping, going to the post office, attending medical appointments, and attending her commission hearing. Relator contends that the magistrate and commission erred in finding evidence of her ability to *Page 3 
perform these daily life activities supported the denial of PTD, citingState ex rel. Lawson v. Mondie Forge, 104 Ohio St.3d 39, 2004-Ohio-6086. Relator asserts that Lawson made clear that a claimant may be able to perform his or her daily activities and still qualify for PTD.
 {¶ 5} In Lawson, the court explained:
 One of the most enduring (though not often explicitly stated) misconceptions about PTD is that once it is granted, the recipient must thereafter remain virtually housebound. This is a fallacy. PTD exempts no one from life's daily demands. Groceries must be purchased and meals cooked. Errands must be run and appointments kept. The yard must be tended and the dog walked. Where children are involved, there may be significant chauffeur time. For some, family and friends shoulder much of the burden. Others, on the other hand, lack such support, leaving the onus of these chores on the PTD claimant.
 These simple activities can nevertheless often generate considerable controversy. That is because all of these tasks are potentially remunerative. From the school cafeteria to the four-star restaurant, people are paid to prepare meals. People are paid for lawn and child care. Many people earn their living behind the wheel. State ex rel. Parma Comm. Gen. Hosp. v. Jankowski, 95 Ohio St.3d 340, 2002-Ohio-2336, 767 N.E.2d 1143, acknowledged this and cautioned against an automatic disqualification from compensation based on the performance of routine tasks, regardless of their potential for payment. We instead compared the activities with claimant's medical restrictions to determine whether they were so inconsistent as to impeach the medical evidence underlying the disability award.
Id., at ¶ 20-21.
 {¶ 6} Here, the magistrate did acknowledge the fact that relator is able to take care of her basic activities of daily living was not as relevant as both Dr. Schirado and the SHO maintained. However, contrary to relator's view, the magistrate did not find that such *Page 4 
activities were meaningless to the analysis of whether PTD was warranted. Importantly, Lawson does not stand for the proposition that evidence of a claimant's ability to engage in daily activities can never support a finding that the claimant is capable of sustained remunerative employment. If claimant's daily activities are completed without significant limitations, pain, or difficulty, such daily activities could, in part, support a conclusion that the claimant could engage in some level of physical activity consistent with sustained remunerative employment.
 {¶ 7} In the present case, the commission cited Dr. Schirado's report to support its denial of PTD, and we find it constitutes some evidence. Dr. Schirado specifically noted that relator described "no significant limitations" in terms of self care and basic daily activities within the home. Relator cites no contrary evidence to suggest she had any considerable limitations on her in-home physical activities. Thus, the restrictions noted by Dr. Schirado are consistent with the demands of sedentary, in-home work, and Dr. Schirado's findings could support a conclusion that relator could perform some level of sustained remunerative activity within her home.
 {¶ 8} Insofar as relator also contends the SHO wrongly rejected her claim she was "housebound," we also disagree. Dr. Schirado indicated that relator is able to drive "as needed" for basic activities and has 8,000 miles on a five-year-old car. Although Dr. Schirado noted relator's driving ability was substantially restricted, he did not relate that relator was "housebound." Thus, the commission did not abuse its discretion when it found relator's claim that she was "housebound" unpersuasive. Regardless, the SHO relied very little on relator's driving ability, given the SHO concluded relator would be capable of sedentary employment within her home that required only "limited" driving, *Page 5 
with no driving during inclement weather. Therefore, we find the magistrate and commission did not err when they found relator's ability to perform daily life activities provided at least some evidence to deny PTD. Relator's first objection is without merit.
 {¶ 9} With regard to her second objection, relator contends that the magistrate erred when she went beyond the four corners of the commission's order to find justification for the commission's decision to deny PTD. Relator asserts that the magistrate used an analysis not utilized by the SHO to affirm the SHO's finding that relator was a viable candidate for vocational rehabilitation. Specifically, the magistrate found it was reasonable to believe that relator could have availed herself of rehabilitation services at some point in the 12 years between the date of her injury and the filing of her PTD application because: (1) there was a three-year disparity between the date of the injury and the commencement of psychological treatment, during which she could have participated in retraining; and (2) the vocational consultant's report that relator was not a good candidate for retraining was based upon her current condition and did not address her ability to undergo retraining in the 12 years prior to the report. Relator argues that the SHO never cited either of these reasons when finding relator failed to participate in rehabilitation services.
 {¶ 10} We find relator's contentions unavailing. We first note that, in addressing the issue of vocational retraining in her order, the SHO cited evidence to support her finding. The SHO indicated she found no evidence in the record that relator had undergone vocational retraining. The SHO found that relator's rehabilitation file was closed in 1998, due to relator's failure to respond to contacts, and relator's rehabilitation file was reopened and closed again in 1999 due to her failure to reply. This evidence, in and of *Page 6 
itself, constituted "some evidence" to demonstrate that relator had failed to participate in rehabilitation services, and no further explanation was necessary.
 {¶ 11} Notwithstanding, upon mandamus, relator's argument on this issue focused not on whether the SHO presented some evidence but, rather, whether the SHO's conclusion regarding retraining was reasonable in light of other evidence in the record. The magistrate's treatment of relator's argument merely illuminated the SHO's points and explained why the evidence cited by relator, namely the vocational consultant's report, did not negate the SHO's analysis. In this respect, the magistrate's determinations were proper. Thus, the magistrate did not err when she provided justification for the commission's decision to deny PTD, and relator's second objection is without merit.
 {¶ 12} Relator argues in her third objection that the magistrate erred when she found the commission's conclusion that relator could perform sedentary work from within her home did not constitute an abuse of discretion, because the finding of the SHO was not supported by evidence of a viable market for in-home keyboarding positions compatible with all of relator's physical and psychological limitations. We first note that the commission is not required to list specific jobs that relator could perform. See State ex rel. Collins v. Almar Realty Corp., Franklin App. No. 05AP-862, 2006-Ohio-3554, at ¶ 38 (the commission is not required to list any jobs which it believes a claimant can perform); State ex rel.Ward v. Dorman Products, Franklin App. No. 05AP-28, 2005-Ohio-5425, at ¶ 33. The only determination that the commission must make is whether relator is capable of sustained remunerative employment.Collins, at ¶ 11. Thus, that the commission endeavored to mention a specific in-home job as an example is of no consequence. *Page 7 
 {¶ 13} With regard to relator's specific physical and psychological limitations, the record does not support relator's contention that she is incapable of sustaining employment within a home setting. Dr. Stephen Ribaudo indicated in his report that relator had only a 13 percent impairment for her allowed physical conditions and that she was capable of sedentary work. With regard to her psychological conditions, Dr. Schirado indicated relator had no difficulty with relationships or personal contacts when at home and had no difficulty with concentration, persistence, and pace that would preclude work inside the home setting. He also indicated that relator reported no significant difficulty in the home setting secondary to her psychiatric diagnosis, and she was able to adapt to stress and maintain functioning while in her home. Dr. Schirado opined that relator would be able to maintain employment with simple, routine, repetitive tasks that required reasonable, minimal contact with peers and supervisors. These physical and psychological findings by Drs. Schirado and Ribaudo are consistent with the commission's conclusion that relator would be able to engage in some sort of in-home employment. Therefore, relator's third objection is without merit.
 {¶ 14} After an examination of the magistrate's decision, an independent review of the evidence pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections. Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, and deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 McGRATH, P.J., and FRENCH, J., concur. *Page 8 
 APPENDIX A MAGISTRATE'S DECISION Rendered April 8, 2008 IN MANDAMUS {¶ 15} Relator, Beverly L. Lynch, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation. *Page 9 
Findings of Fact: {¶ 16} 1. Relator has sustained two work-related injuries and her claims have been allowed for:
 PEL228022 — CONTUSION; NECK STRAIN; LUMBAR SPRAIN; LUMBAR RADICULOPATHY; HERNIATION L4-L5 DISC; PANIC DISORDER WITH AGORAPHOBIA; DEPRESSIVE DISORDER, NOT OTHERWISE SPECIFIED; PROLONGED POST-TRAUMATIC STRESS DISORDER.
 PEM334644 — RIGHT LATERAL EPICONDYLITIS.
 {¶ 17} 2. Relator's last injury occurred in 1994 while she was working as a bus driver for the City of Toledo, Ohio. The accident occurred in rainy conditions when a vehicle came around a curve and struck the bus head on. The majority of relator's allowed conditions, specifically her psychological conditions, stem from this injury.
 {¶ 18} 3. On June 11, 2007, relator filed an application for PTD compensation. Pursuant to her application, relator was 51 years old, had quit school in the sixth grade but had obtained her GED. Relator indicated that she could read and that she could write and perform basic math, but not well. Relator indicated that she uses a cane to ambulate and that she has not participated in rehabilitation services. Relator last worked in 1995.
 {¶ 19} 4. In support of her application, relator submitted the April 3, 2006 report of James F. Brogle, Ph.D. Dr. Brogle opined that, based upon her allowed psychological conditions, relator was not capable of any substantial remunerative employment now or anytime in the foreseeable future. Dr. Brogle indicated that he sees relator on a monthly basis and that she continues on medication for her depression (Zoloft). He noted that at times relator exhibits progress; however, she has relapsed periods with accompanying depression. Lastly, he noted that relator's psychological condition had not improved in *Page 10 
spite of numerous medication adjustments and therapeutic techniques over the past nine years.
 {¶ 20} 5. An independent medical examination was performed by Stephen Ribaudo, M.D., on August 24, 2006. Based upon relator's allowed physical conditions, Dr. Ribaudo assessed a 13 percent whole person impairment and opined that relator was capable of performing at a sedentary work level.
 {¶ 21} 6. Relator was examined by psychologist Dr. William C. Schirado who issued a report dated July 27, 2006. In his report, under the heading "chief complaints," Dr. Schirado indicated that relator informed him as follows:
 * * * ["]I had a head-on collision. It was raining. He was coming around a curve. My back was all messed up and my shoulder and neck were bruised. I still have treatment, but I watch what I do. My right leg is two inches shorter and I have problems with my hip." Upon questioning, she states, "I have flashbacks. I don't sleep well. I have nightmares." She is notably vague regarding frequency of flashbacks and nightmares, stating, "It depends. I don't know on the average, like when it's raining. I get sick, sick, sick in bed. I wouldn't get out of bed. I practice having a safe spot when I go somewhere. I have panic attacks, like if it's going to rain. It could come any time. Sometimes three times a day for a week. I know how to deal with it."
 {¶ 22} Relator also informed Dr. Schirado that she was currently taking Zoloft, Xanax, Tylenol-3, and Estrogen. Relator further reported that she had reasonably stable sleep patterns, that "[t]he last two weeks were hell because I was anxious about this evaluation. The month before, it was average." With regards to her family situation, relator stated that her parents were divorced when she was two years old; her father died when he was 74 years old; she had one brother to whom she had not spoken for ten years and who died two years ago; she has six step-brothers and sisters; she married at *Page 11 
age 15, but was divorced after 3 years; she was remarried at age 20 and that marriage lasted 18 years; she and her second husband remain good friends; and she married a third time and they were together for ten years until he committed suicide after losing his job. Regarding her mental status, Dr. Schirado noted that relator's facial expressions were moderately subdued and consistent with moderate anxiety; relator had mild flattening and blunting of affect and presented with moderate depressive symptomology. He also noted that relator's thought content was marked by mild to moderate obsession and rumination regarding her physical conditions and anticipatory anxiety. Thereafter, Dr. Schirado noted that relator was able to perform activities of daily living with some difficulties and limitations which she associated with her physical condition. Dr. Schirado noted that relator reports at least moderate difficulty outside the home setting. Relator informed him that she drives very little, only as needed for basic activities such as shopping and going to the post office. Relator indicated that she has eight thousand miles on her five-year-old car. Relator further indicated that she has considerable difficulty leaving the home when it is raining and increased anticipatory anxiety when she has to make a trip or keep a new appointment. Socially, Dr. Schirado noted that relator had no significant difficulty in terms of interpersonal relationships or contact provided she was confined to her home. Relator reported increased tendencies towards isolation and indicated that she did not leave her home as often. With regards to her concentration, persistence and pace, Dr. Schirado indicated that there was no significant difficulty in the home setting secondary to the psychiatric diagnoses. He indicated that relator attributed limitations in this area to her physical complaints. Dr. Schirado again noted that relator has moderate difficulties when she must leave the house during inclement weather or *Page 12 
when she has to adapt to new situations and changes. In his discussion section, Dr. Schirado stated:
 From her description, the depressive disorder is assessed as chronically mild, with severity increasing to moderate over the past 2 to 3 years secondary to non-work related issues; specifically, with multiple deaths of relatives. The severity of the panic disorder has historically ranged from mild to moderate, with increase in severity to a moderate level over the past 2 to 3 years, again due to the death of multiple relatives. Post-Traumatic Stress Disorder is assessed as chronically moderate.
 {¶ 23} In conclusion, Dr. Schirado opined that relator had a 75 percent whole person impairment based solely on the allowed psychological conditions, but that she would be able to work with the following limitations:
 * * * Mrs. [Lynch] would not be able to pursue employment duties that required driving. Tasks and responsibilities would need to be consistent with simple, routine, repetitive tasks and require reasonable, minimal contact with peers and supervisors. She would have considerable difficulty working with the general public or in situations which require recurring, significant adaptation/changes. She would likely experience moderate difficulties with attendance during inclement weather.
 {¶ 24} 7. Relator's application was heard before a staff hearing officer ("SHO") on June 11, 2007 and was denied. The commission relied on the report of Dr. Ribaudo and concluded that relator could perform at a sedentary work level. The commission also relied upon the report of Dr. Schirado and noted as follows:
 * * * Doctor Schirado points out that injured worker described no significant limitations in terms of self-care or basic daily activities within the home due to the allowed psychological conditions. Rather, considerable difficulties and limitations were described by injured worker in regard to her allowed physical conditions. The injured worker did indicate that she was able to drive independently as need for basic activities, *Page 13 
such as shopping and going to the post office. She also reported difficulty leaving the home when it was raining in addition to increased anticipatory anxiety when she had to make a trip or keep a new appointment. As far as social functioning, the injured worker indicated that she had no significant difficulty in terms of interpersonal relationships or contact when confined to the home. She reported some increased tendencies towards isolation and not leaving her home as often.
 As to concentration, persistence, and pace, once again, injured worker reported that her main limitations were due to her physical complaints and that she had moderate problems with concentration, persistence, and pace in terms of the allowed conditions outside the home setting. Doctor Schirado noted that injured worker would have no difficulties with work inside the home setting, but moderate difficulties when she must leave the house during inclement weather or adapt to new situations and changes. He noted injured worker's use of psychotropic medications, and found that her allowed psychological conditions had reached Maximum Medical Improvement status.
 Doctor Schirado concluded that injured worker would not be able to pursue employment that required driving. Tasks and responsibilities would need to be consistent with simpler routine, repetitive tasks, and require reasonably minimal contact with peers and supervisors. She would have considerable difficulty working with the general public or in situations which require recurring, significant adaptations/-changes. She would likely experience moderate difficulties with attendance during inclement weather.
 This Staff Hearing Officer finds that the report of Doctor Schirado does not preclude injured worker from performing sustained remunerative employment. Specifically, if injured worker were able to find employment that she could do within her home or work that did not require her to be driving.
(Emphasis sic.)
 {¶ 25} Thereafter, the SHO analyzed the disability factors fromState ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, and concluded that relator could perform some sustained remunerative employment at a sedentary level, specifically *Page 14 
within her home or a job that required limited driving. The SHO also determined that relator's age, education and work history provided her with the capacity to acquire new skills that could widen the scope of employment options available to her. Lastly, the SHO noted that relator has not participated in any rehabilitation services. Quoting State exrel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, and State exrel. B.F. Goodrich Co. v. Indus. Comm. (1995), 73 Ohio St.3d 525, the SHO held relator accountable for her failure to have attempted to develop any employment skills in the 12 years since the date of injury.
 {¶ 26} 8. Relator's request for reconsideration was denied by order of the commission mailed August 20, 2007.
 {¶ 27} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 28} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be *Page 15 
given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 29} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors.Stephenson. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 30} For the reasons that follow, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus.
 {¶ 31} At the outset, the magistrate understands relator's concerns with the commission's reliance on a psychological report that finds relator has a 75 percent whole person impairment based solely on the allowed psychological conditions. It need not be said that that is a significant percentage. Further, the fact that relator is able to take care of her basic activities of daily living (bathing, dressing, eating, using the toilet, and transferring from bed to chair and back), is not as relevant as it appears both Dr. Schirado and the SHO maintain.
 {¶ 32} A review of Dr. Schirado's report indicates that relator's psychological limitations are significant: simple, routine, repetitive tasks; minimal contact with peers and *Page 16 
supervisors; considerable difficulty working with the general public or in situations requiring recurring, significant adaptation or changes; and, she would experience moderate difficulties with attendance at work during inclement weather. The SHO noted that, based upon those limitations, relator would be able to find employment that she could do within her home or work that did not require her to be driving. Further, the commission specifically noted that it did not find relator's statements that she was housebound persuasive. Relator did indicate an ability to get out as needed. Being mindful that the weight and credibility of the evidence are for the commission to decide, and are not to be reweighed by this court, the magistrate finds the commission's determination that relator can perform some sustained remunerative employment given her significant impairment is supported by some evidence and does not constitute an abuse of discretion.
 {¶ 33} Whether or not this court agrees with the commission's reliance on the reports of Drs. Schirado and Ribaudo and the commission's analysis of the nonmedical factors, the magistrate finds, nevertheless, that this court should deny relator's request for a writ of mandamus. Relator's injury occurred in 1994. According to the report of Dr. Brogle, relator's psychiatrist, she did not begin seeing him for three years, or in 1997. The record indicates that relator has not availed herself of any rehabilitation or retraining despite the fact that she was only 39 years old when this injury occurred. While her rehabilitation file was opened in both 1998 and 1999, her file was closed both times due to her lack of response. Coupled with the psychiatric evidence that relator's psychological condition has worsened over time, especially the last two-to-three years, it is reasonable to accept that relator could have availed herself of rehabilitation services at some point in *Page 17 
time in the 12 years between the date of her injury and the filing of her application for PTD compensation. There is no indication in the record that relator's lack of participation was based upon a physician's medical advice, or on a vocational evaluation that concluded that she was intellectually, psychologically, or emotionally incapable of retraining. Relator points to the vocational report of Joseph Havranek who found that in July 2007, relator was not a candidate for rehabilitation or retraining and asserts that any rehabilitation or retraining would be a vain act and her failure to attempt cannot be used to deny her PTD compensation. However, Mr. Havranek's finding that relator was not a good candidate for rehabilitation or retraining in 2007 does not address her ability or inability to attempt some in the years following the 1994 date of injury. The commission can consider that relator may have developed skills if she would have availed herself of rehabilitation or retraining in the 12 years before Mr. Havranek authored his report. Further, relator has not had any surgeries for any of her allowed physical conditions so this could not have been a factor which kept her from participating in rehabilitation services. As the court stated in B.F. Goodrich, an award of PTD compensation should be reserved for the most severely disabled workers and allowed only when there is no possibility for re-employment. Given relator's young age of 39, her attainment of a GED, her ability to receive an EMT license, that she did not seek psychological services for three years, and the fact that her psychological condition worsened over time, it is not an abuse of discretion for the commission to hold her accountable for her failure to participate in rehabilitation which could have developed potential skills leading to some employment. *Page 18 
 {¶ 34} Based on the foregoing, it is this magistrate's conclusion that the commission's order is supported by some evidence and relator's request for a writ of mandamus should be denied. *Page 1