DECISION
{¶ 1} Relator, Ora L. Letcher, as the surviving spouse of John Letcher, filed this original action, which requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying Mr. Letcher's *Page 2 
application for permanent total disability ("PTD") compensation and to enter an order awarding relator the compensation Mr. Letcher would have received, but for his death.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant a writ ordering the commission to vacate the April 20, 2004 order and, in a manner consistent with the magistrate's decision, enter a new order either granting or denying the application. (Attached as Appendix A.) No party has filed objections to the magistrate's findings of fact, and we adopt them as our own.
 {¶ 3} As detailed in the magistrate's decision, the commission relied upon the medical report of Dr. Ron M. Koppenhoefer and the employability assessment and deposition testimony of Ms. Christine Vogelsang. Although not entirely clear, Dr. Koppenhoefer's report indicated that Mr. Letcher was capable of sedentary work, but the allowed conditions precluded him from performing "material handling tasks" and he "should be able to change his position at will."
 {¶ 4} Based on Dr. Koppenhoefer's findings and considering other relevant non-medical factors, Ms. Vogelsang concluded that Mr. Letcher was capable of performing identified jobs, which, in her view, were sedentary in nature and required below average academic aptitude: monitor, operator, charter, preparer, engraver, and stuffer. The magistrate concluded that the commission could not rely on Ms. Vogelsang's list of employment options for two reasons: (1) Ms. Vogelsang stated in her deposition that all but the monitor job would require some degree of material handling; and (2) as to the monitor job, Ms. Vogelsang stated that sedentary jobs usually do not permit the worker *Page 3 
to change positions at will. While the magistrate did not eliminate Ms. Vogelsang's report entirely, the magistrate recommended a writ ordering the commission to enter a new order either granting or denying the application.
 {¶ 5} The commission has filed objections to the magistrate's conclusions of law, essentially arguing that the magistrate substituted his judgment for that of the commission. We agree.
 {¶ 6} The Ohio Supreme Court has repeatedly held that this court may not substitute its judgment for the commission's judgment in evaluating evidence. See, e.g., State ex rel. Athey v. Indus. Comm.,89 Ohio St.3d 473, 476, 2000-Ohio-489; State ex rel. Jackson v. Indus. Comm.,79 Ohio St.3d 266, 268, 1997-Ohio-152. Instead, the commission is the exclusive evaluator of factual evidence in determining whether an individual is entitled to compensation. State ex rel. Cherryhill Mgmt., Inc. v. Indus.Comm., 116 Ohio St.3d 27, 2007-Ohio-5508, ¶ 13; State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165. More to the point at issue here, this court has previously held that the commission need not explain why it concluded a claimant could perform each of the jobs listed in an order or expert report. State ex rel. Collins v. Almar RealtyCorp., Franklin App. No. 05AP-862, 2006-Ohio-3554, ¶ 17.
 {¶ 7} As to whether the jobs listed in her report require material handling, Ms. Vogelsang stated that, with the exception of monitor, the jobs would require material handling to "some degree." (Depo., 24.) Despite this testimony, the commission was free to determine for itself what tasks each job required and whether those tasks conflicted with the medical evidence. For example, the job of telephone operator, as defined by the commission, requires the worker to operate a switchboard to relay calls. *Page 4 
While the description states that the job may require a worker to type or sort mail, the basic requirements of the position only require a worker to push switch keys and plug telephone jacks into a switchboard. Likewise, the job description of a charter, who observes horseraces and records and communicates relevant data, does not indicate that it requires material handling. Instead, the job requires the individual to record information, compute race completion times, and mail records. Thus, at the very least, the commission reasonably could conclude that these jobs require no material handling, despite Ms. Vogelsang's testimony.
 {¶ 8} As to whether Mr. Letcher was capable of performing the position of monitor, we note the magistrate's reliance on the exchange between relator's counsel and Ms. Vogelsang at her deposition. In our view, that testimony does not establish with certainty that Mr. Letcher could not perform any of the jobs identified by Ms. Vogelsang. Ms. Vogelsang agreed that, "[f]or the most part," sedentary jobs require the ability to sit for six out of eight hours, not that they always require sitting for six hours straight without any movement. (Depo., 23.) When asked whether sedentary jobs "traditionally" permit an individual to get up and move at all, she responded: "Not usually. That's changing, though, a lot, based on the current labor market. Employers are being much more flexible." (Depo., 23-24.) In other words, Ms. Vogelsang's testimony did not establish that Mr. Letcher could not perform the job of monitor.
 {¶ 9} In any event, as with the other positions, the commission was free to determine whether Mr. Letcher could work as a monitor within his restrictions. As the position description indicates, the job of surveillance system monitor requires an individual to monitor the premises of public transportation terminals by watching closed *Page 5 
circuit television screens and to notify authorities, as needed. There is nothing within the job description indicating that the monitor must perform these duties only while seated or without changing his or her position at will. Thus, there is some evidence on which the commission could conclude that Mr. Letcher could perform the job of monitor.
 {¶ 10} In short, the staff hearing officer's ("SHO's") order following the April 30, 2004 hearing indicates a careful review of Dr. Koppenhoefer's medical report and Ms. Vogelsang's assessment, addendum, and testimony. The SHO clearly understood Mr. Letcher's physical and intellectual limitations. While relator and the magistrate, or even we, may have determined that Ms. Vogelsang's report was not persuasive or that Mr. Letcher could not perform any sedentary work, we must decline to reweigh the evidence or to second guess the SHO's evaluation of it. Therefore, we sustain the commission's objections.
 {¶ 11} Having conducted an independent review, and for the reasons stated above, we accept the magistrate's findings of fact as our own, but we decline to accept the magistrate's conclusions of law. Accordingly, we deny the requested writ.
Objections sustained, writ of mandamus denied.
 KLATT and SADLER, JJ., concur. *Page 6 
 APPENDIX A MAGISTRATE'S DECISION Rendered January 25, 2008 IN MANDAMUS {¶ 12} Relator, Ora L. Letcher, is the surviving spouse of John Letcher ("decedent") who died on November 20, 2002 as a result of conditions unrelated to his industrial injuries. In this original action, relator requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying *Page 7 
decedent's application for permanent total disability ("PTD") compensation filed October 11, 2001, and to enter an order awarding relator the compensation which decedent might have received but for his death pursuant to R.C. 4123.60.
Findings of Fact: {¶ 13} 1. Decedent sustained two industrial injuries while employed as a welder for respondent Keco Industries, Inc., a state-fund employer. The October 21, 1998 injury is allowed for "sprain lumbosacral; herniated disc L4-5; sciatica; radiculitis," and is assigned claim number 98-553568. The March 31, 2000 injury is allowed for "sprain lumbosacral," and is assigned claim number 00-367165.
 {¶ 14} 2. On October 11, 2001, decedent filed an application for PTD compensation.
 {¶ 15} 3. On February 8, 2002, at the commission's request, decedent was examined by Ron M. Koppenhoefer, M.D., who wrote:
 When using the AMA Guides Fourth Edition, he would have the following degree of impairment as it relates to these allowed conditions:
 [One] Claim no. 98-553568 — sprain lumbosacral, herniated disc L4-5, sciatica/radiculitis, he would have a condition, which would equal to a DRE Lumbosacral Category III. This would equal to a 10% whole person impairment
 [Two] Claim [no.] 00-367165 — sprain lumbosacral, he would have a DRE Category II degree of impairment or a 5% whole person impairment.
 Using the Combined Tables, the total degree of impairment would equal to 15%.
 Mr. Letcher has associated medical conditions, which would interfere with his ability to work. His recent throat cancer surgery has caused him to have a left adhesive capsulitis or frozen shoulder as well as decreased voice quality. This *Page 8 
could interfere with his ability to do sedentary work activities. His adhesive capsulitis involving his left shoulder would prevent him from doing material handling tasks but I believe his back would prevent him from those activities. He has evidence of left knee severe osteoarthritic changes. He is also status post right total knee replacement. I believe the combination of these changes would also restrict his ability to use his legs for foot pedals or perform standing, walking, climbing activities.
 Based solely on the allowed conditions recognized in both claims[, ] I believe Mr. Letcher would be limited to sedentary work activities. He should be able to change his position at will.
 {¶ 16} 4. In support of his PTD application, decedent submitted a vocational report dated March 20, 2002 from psychologist Jennifer J. Stoeckel, Ph.D. Dr. Stoeckel wrote:
 TEST RESULTS
 On the Weschsler Adult Intelligence Scale-III, Mr. Letcher obtained Verbal, Performance, and Full Scale IQ scores of 74, 73, and 71, respectively. These scores place Mr. Letcher at the borderline range for intellectual functioning and at the 3rd percentile. Scores are consistent with Mr. Letcher's reported academic difficulties. The discrepancy between Verbal and Performance IQ scores is small and insignificant. He was particularly weak on verbal understanding, verbal reasoning and attention to detail. No particular strengths were noted. Generally, individuals who score at this range have difficulty completing a high school education without benefit of special education. Within the labor force they are typically employed in unskilled labor intensive positions. * * *
 * * *
 On the Wide Range Achievement Test-III, Mr. Letcher scored at the 3rd grade level for reading, 2nd grade level for spelling and 4th grade level for arithmetic. Academically, this individual is functioning only at a very early elementary level. Based upon his performance and limited academic history, Mr. Letcher could not compete in entry level clerical type positions due to his limitations. * * * *Page 9 
 * * *
 The Career Ability Placement Survey was also administered. The Career Ability Placement Survey assesses eight abilities important for success in a variety of work fields. Scores are reported as stanines which range from 1 to 9 with stanines of 1, 2, and 3 being considered below average; 4, 5, and 6 as average; and 7, 8 and 9 as above average. On this measure, Mr. Letcher demonstrated low average mechanical reasoning and manual speed and dexterity, but below average functioning in all remaining work aptitudes measured including spatial reasoning, verbal reasoning, numerical ability/facilitation, language usage/grammar, word knowledge and perceptual speed and accuracy. * * *
 * * *
 OPINION
 * * *
 Summarily, within reasonable vocational certainty, Mr. Letcher would be considered permanently and totally disabled based upon his age characteristics, limited education, lack of transferable work skills, and significantly below average intellectual, academic, and vocational testing as noted per formal exam. Mr. Letcher is an amicable individual who attempted to maintain himself in the work force post the 1998 injury. However, he subsequently required a low back surgery and suffered another injury in 2000. While he does have unrelated health concerns, the back condition and his vocational characteristics would preclude employment. He doesn't have sufficient reading, math or appropriate verbal skills to compete in entry level type positions.
 {¶ 17} 5. The commission requested an employability assessment report from vocational expert Christy L. Vogelsang, M.Ed. Ms. Vogelsang completed her report on September 16, 2002. Part II, captioned "Employability Options," presents the following question: *Page 10 
 Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations that arise from the allowed condition(s), identify occupations that the claimant may reasonably be expected to perform, (A) immediately and/or, (B) following appropriate academic remediation or brief skill training.
 {¶ 18} In response to the above question, Ms. Vogelsang listed employment options applicable to Dr. Koppenhoefer's report which she summarized:
 Dr. Koppenhoefer, PMR, 2/8/02[.] Based solely on the allowed conditions in both claims, I believe Mr. Letcher would be limited to sedentary work activities.
 {¶ 19} Ms. Vogelsang listed the following employment options corresponding to Dr. Koppenhoefer's report: "Monitor, Operator, Charter, Preparer, Engraver [and] Stuffer."
 {¶ 20} 6. In her September 16, 2002 report, Ms. Vogelsang indicated that decedent has a tenth grade education.
 {¶ 21} 7. On November 20, 2002, decedent died. The death certificate lists "metastatic carcinoma" as a cause of death.
 {¶ 22} 8. Following a September 10, 2003 hearing, a staff hearing officer ("SHO") issued an interlocutory order stating:
 The Staff Hearing Officer finds that the injured worker did not have a 10th grade education, as stated by the vocational evaluator, Ms. Vogelsang. Rather, the transcript of grades submitted indicates that the last grade completed was 8th grade.
 The Staff Hearing Officer requests that Ms. Vogelsang consider that information and submit an addendum to her report as to whether the injured worker would have been able to perform the employment options with an 8th
grade education. *Page 11 
 {¶ 23} 9. Pursuant to the September 10, 2003 SHO's order, Ms. Vogelsang issued an addendum report dated September 19, 2003, stating:
 * * * The purpose of this addendum is to evaluate employment options based on an Interlocutory Order by SHO Lisa Grosse requesting that I consider evidence concerning worker's education being only 7th grade plus failed attempts to complete the 8th and address the question of whether or not the new evidence would change the conclusions concerning employment options. The evidence attached to the request was worker's records from Cincinnati Public Schools. These records show "special education" at Stowe and Dyer Schools, completion of 7th grade with C's and D's, retention in 8th grade for two years, and transfer to 9th grade per Principal assignment. The 7th
and 8th grades were regular school.
 * * *
 * * * After review of the entire previous file submitted and my previous report, plus new records of academic failure and poor attendance at school, and based on worker's successful completion of welder training and successful performance in that skilled welder position for 11 years, it would still be my conclusion that worker would have retained capacity for the jobs listed, based solely on allowed conditions and Dr. Koppenhoefer's opinion.
 {¶ 24} 10. On March 5, 2004, relator's counsel deposed Ms. Vogelsang pursuant to a commission order. During the deposition, the following exchange occurred:
 [Relator's counsel] Sedentary jobs require, as I understand it, the ability to sit for most of the day; is that right? They are primarily seated jobs?
 [Ms. Vogelsang] That's correct.
 [Relator's counsel] For the most part do they require the ability to sit generally 6 out of 8 hours?
 [Ms. Vogelsang] That's a fair statement.
 [Relator's counsel] And they require your ability to sit for substantial periods of time; is that correct? *Page 12 
 [Ms. Vogelsang] Usually.
 [Relator's counsel] Do they traditionally allow the ability to get up and move at will?
 [Ms. Vogelsang] Not usually. That's changing, though, a lot, based on the current labor market. Employers are being much more flexible.
 [Relator's counsel] But as they are traditionally performed they don't allow the ability to get up and move at will; is that correct?
 [Ms. Vogelsang] There might usually be two hours and then a 15-minute break, two hours and then a lunch break, two hours, that sort of thing.
 [Relator's counsel] During that two-hour period you have to be able to set sit at the work station?
 [Ms. Vogelsang] And do something, yes.
 [Relator's counsel] Of the jobs that you have listed, which I think there's six of them, whatever?
 [Ms. Vogelsang] Yes.
 [Relator's counsel] Do they all require some degree of material handling?
 [Ms. Vogelsang] Except the monitor, which is sit and watch a screen.
 [Relator's counsel] So the other ones all require some degree of material handling?
 [Ms. Vogelsang] Yes.
 {¶ 25} 11. Following an April 30, 2004 hearing, an SHO issued an order denying decedent's PTD application. The SHO's order states:
 This order is based upon the reports of Ms. Vogelsang and Dr. Koppenhoefer. *Page 13 
 This file came on for hearing on the issue of Widow-Claimant's request for the payment of Permanent and Total Disability Compensation accrued at the time of the Injured Worker's death on 11/20/2002.
 The Application for Permanent and Total Disability filed 10/11/2001 has been filed in two industrial claims. Both injuries occurred when the decedent was employed as a welder. The first claim carries a date of injury of 10/21/1998. The Injured Worker injured his low back trying to help lift a frame for pipe. The Injured Worker had surgery in April of 1999 for this injury. The Injured Worker also had two lumbar epidurals in this claim. The Injured Worker did return to work after this injury until he sustained the injury that is recognized in claim number 00-367165. At that time, the Injured Worker sustained a lumbosacral sprain while cutting a compressor. The Injured Worker did not return to work after the injury in the second claim. The Injured Worker enrolled in a rehabilitation program, but, he was not successful in completing it. The Injured Worker died on 11/20/2002 as a result of metastatic carcinoma.
 Dr. Ron Koppenhoefer, physical medicine and rehabilitation, examined the Injured Worker on 02/08/2002. To Dr. Koppenhoefer the Injured Worker complained of constant dull low back pain which was aggravated with prolonged sitting, bending, and stooping. He also complained of constant numbness in the left foot. Dr. Koppenhoefer's examination findings are contained in his report. Dr. Koppenhoefer also reviewed medical reports, office records and procedure notes contained in the claim file.
 Dr. Koppenhoefer concluded that the Injured Worker's condition had reached maximum medical improvement for all of the conditions that are recognized in the industrial claims. Dr. Koppenhoefer opined that the Injured Worker had non-allowed medical conditions which would interfere with the Injured Worker's ability to work. He further opined, however, that based solely on the allowed conditions, the Injured Worker would be capable of sedentary work activities. He further advised that the Injured Worker should be able to change his position at will. On the Physical Strength Rating Form that is attached to his report, Dr. Koppenhoefer indicated that the Injured Worker was capable of physical work activity described as sedentary work. *Page 14 
 The Staff Hearing Officer finds that at the time that Dr. Koppenhoefer examined the decedent, the decedent's medical condition had reached maximum medical improvement for the conditions that are recognized in these industrial claims. The Staff Hearing Officer further finds that at the time of Dr. Koppenhoefer's examination the decedent had the physical functional capacity to perform employment activities that are sedentary in nature. This finding is based solely on the conditions that are recognized in these claims.
 Ms. Christy Vogelsang, prepared an employability assessment report for the Industrial Commission on 09/16/02. Ms. Vogelsang prepared an addendum to her original report that is dated 09/19/2003. Ms. Vogelsang was deposed by counsel for the decedent on 03/05/2004. A transcript of the deposition is contained in the claim file. Ms. Vogelsang opined that if she accepted the residual functional capacities opinion of Dr. Koppenhoefer, the Injured Worker could perform the following jobs immediately: monitor, operator, charter, preparer, engraver and stuffer. She further advised that the Injured Worker's age of 52 years was a positive factor with regard to the Injured Worker's ability to return to work. She further advised that the Injured Worker's work history which involved the performance of skilled work as a welder was a factor. She further advised that in the * * * Injured Worker's work history, he had demonstrated academic skills above entry level. Ms. Vogelsang described as strengths the fact that the Injured Worker had performed skilled work, was capable of sedentary work and had demonstrated the ability to change jobs and learn new tasks on the job in the past. Ms. Vogelsang noted that there are inconsistencies in information reported in the claim file noting that the Injured Worker indicated to different examiners that he had an 8th grade education, a 10th grade education or a GED. She further noted that there are also inconsistencies in the claim file concerning the Injured Worker's military history and the source of his training as a welder. Ms. Vogelsang described the Injured Worker's work history has having involved skilled employment as a welder which was performed at the medium strength level. Ms. Vogelsang reported testing administrated to the Injured Worker by Dr. Stoeckel which showed a full-scale IQ of 71, 3rd grade reading, 2nd grade spelling and 4th grade arithmetic. Ms. Vogelsang advised that in his work history, however, the Injured Worker had demonstrated high school level reasoning, and 7th to 8th grade level math and language *Page 15 
skills. She further advised that in his work history, the Injured Worker had demonstrated mostly average aptitudes. Ms. Vogelsang was asked to prepare an addendum based upon school records that were submitted by the Injured Worker demonstrating that the Injured Worker had only a 7th grade special education. Ms. Vogelsang advised in her addendum that assuming only a 7th grade education, her opinion with regard to the Injured Worker's ability to work did not change. Based upon this new evidence, Ms. Vogelsang opined that the Injured Worker would still be able to perform the following jobs immediately: monitor, operator, charter, preparer, engraver and stuffer. Ms. Vogelsang advised that these jobs are unskilled and require below average academic aptitude. In the addendum Ms. Vogelsang opined that after review of the claim file and her previous report, plus the new records of academic failure and poor attendance in school, and based upon the Injured Workers successful completion of welder training, and successful performance in that skilled welder position for 11 years, the Injured Worker would have retained the capacity for the jobs listed based solely on the allowed conditions and Dr. Koppenhoefer's opinion.
 In the deposition, Ms. Vogelsang indicated that she was aware of the testing performed by Dr. Stoeckel. She further indicated, however, that in the performance of his skilled job as a welder, the Injured Worker had demonstrated in his work history that his abilities were higher. She further advised that the general educational development in her report is based upon the Injured Worker's work history.
 The Staff Hearing Officer finds that at the time the decedent passed away, he was 53 years of age. The Staff Hearing Officer further finds that the Injured Worker had a 7th grade education and a work history which involved employment as a welder. The Staff Hearing Officer further finds that the Injured [Worker] had special vocational training in welding. The Staff Hearing Officer further finds that the Injured Worker had a very limited ability to read, write and perform basic math.
 The Staff Hearing Officer finds that the Injured Worker's age of 53 years was a mild barrier to the Injured Worker with regard to his ability to return to and compete in the work force. The Staff Hearing Officer further finds, however, that age alone is not a factor which absolutely prevents any *Page 16 
person from returning to work. The Staff Hearing Officer further finds that the Injured Worker's limited education was a barrier to the Injured Worker with regard to his ability to return to work. The Staff Hearing Officer further finds, however, that the Injured Worker never had greater than a limited education and it did not prevent him from working in the past. The Staff Hearing Officer finds that not only did the Injured Worker's limited education not prevent him from working, it did not prevent him from performing skilled employment activities. The Staff Hearing Officer further finds that the fact that the Injured Worker learned to perform the skilled employment of a welder in spite of his limited education is evidence that the Injured Worker possessed the intellectual capacity to learn to perform at least unskilled employment activities in the future.
 The Staff Hearing Officer further finds that at the time that the Injured Worker was examined by Dr. Koppenhoefer, the Injured Worker retained the physical functional capacity to perform employment activities which are sedentary in nature, based solely on the conditions that are recognized in the industrial claim. The Staff Hearing Officer further accepts the opinion of Ms. Vogelsang and finds that based upon the opinion of Dr. Koppenhoefer, the Injured Worker could have performed the following jobs with minimum training: monitor, operator, charter, preparer, and stuffer. The Staff Hearing Officer therefore finds that the Injured Worker was capable of sustained remunerative employment based solely on the allowed conditions and was not permanently and totally disabled. Therefore the widow-claimant's request for the payment of compensation for accrued permanent total disability at the time of death is denied.
 {¶ 26} 12. On February 22, 2007, relator, Ora L. Letcher, filed this mandamus action.
Conclusions of Law: {¶ 27} In the April 30, 2004 order, the SHO extensively discusses Ms. Vogelsang's reports. In the concluding paragraph of the order, the SHO accepts the opinions of Dr. Koppenhoefer and Ms. Vogelsang in finding that the decedent could have performed the listed jobs with minimal training. The SHO concludes that decedent *Page 17 
was capable of sustained remunerative employment and thus denies the PTD application.
 {¶ 28} The issue here is whether the commission, through its SHO, abused its discretion by accepting or relying upon Ms. Vogelsang's opinions regarding the employment options.
 {¶ 29} Finding that the commission did abuse its discretion in accepting or relying on Ms. Vogelsang's opinions, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 30} Apparently, Ms. Vogelsang overlooked or misread the following sentence from Dr. Koppenhoefer's report: "His adhesive capsulitis involving his left shoulder would prevent him from doing material handling tasks but I believe his back would prevent him from those activities."
 {¶ 31} This magistrate must read the above-quoted sentence from Dr. Koppenhoefer's report as it is written. The sentence states that the adhesive capsulitis (a non-allowed condition) would prevent decedent from doing material handling tasks. The sentence also states Dr. Koppenhoefer's belief that relator's "back" would prevent him from doing material handling tasks. Presumably, the word "back" is a reference to the allowed back conditions of both industrial claims.
 {¶ 32} Because the two clauses of the above-quoted sentence are connected by the word "but," there is perhaps a suggestion that the second clause contains a typographical error — that the word "not" was omitted between the words "would" and "prevent." However, this magistrate cannot add a word to the sentence that would, in effect, completely reverse its meaning. *Page 18 
 {¶ 33} In short, the magistrate must read Dr. Koppenhoefer's report as stating that relator's back prevents him from doing material handling tasks.
 {¶ 34} Notwithstanding Dr. Koppenhoefer's opinion that decedent's back injuries prevent him from doing material handling tasks, during her deposition Ms. Vogelsang stated that all the employment options listed in her report, except monitor, require some degree of material handling. Thus, Ms. Vogelsang's opinion that decedent can perform the jobs of operator, charter, preparer, engraver and stuffer, based upon Dr. Koppenhoefer's report, must be eliminated from further evidentiary consideration.
 {¶ 35} While the above analysis does not eliminate Ms. Vogelsang's opinion regarding the monitor position, further analysis eliminates that position also.
 {¶ 36} During her deposition, Ms. Vogelsang testified that sedentary jobs usually require an ability to sit for substantial periods of time. As an example, Ms. Vogelsang indicated that a sedentary job might require sitting for two hours, followed by a 15 minute break, etc.
 {¶ 37} Dr. Koppenhoefer not only restricted decedent to sedentary work, he also indicated that decedent "should be able to change his position at will."
 {¶ 38} Ms. Vogelsang did not indicate during her testimony that the monitor position allows a worker to change positions at will. To the contrary, Ms. Vogelsang indicated that entry-level sedentary jobs usually do not permit change of position at will.
 {¶ 39} Accordingly, Ms. Vogelsang's opinion in her reports — that the monitor position is an employment option based upon Dr. Koppenhoefer's report — must be eliminated from evidentiary consideration. *Page 19 
 {¶ 40} Clearly, all of Ms. Vogelsang's employment options fail to constitute some evidence upon which the commission can rely.
 {¶ 41} While Ms. Vogelsang's employment options cannot be relied upon by the commission as evidence, other portions of Ms. Vogelsang's reports are not affected by the above analysis. Thus, the entirety of the reports need not be eliminated from further evidentiary consideration.
 {¶ 42} Based upon the above analysis, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of April 30, 2004 and in a manner consistent with this magistrate's decision, enter a new order either granting or denying the application. *Page 1