[Cite as *State ex rel. Honda of Am. Mfg., Inc. v. Indus. Comm. of Ohio*, 2014-Ohio-5245.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Honda of America Mfg., Inc., | : | |
| Relator, | : | |
| v. | : | No. 14AP-82 |
| Industrial Commission of Ohio and Donald Siegfried, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on November 25, 2014

*Vorys, Sater, Seymour and Pease LLP*, *Robert A. Minor*, and *Christopher C. Wager*, for relator.

*Michael DeWine*, Attorney General, and *Cheryl J. Nester*, for respondent Industrial Commission of Ohio.

*Philip J. Fulton Law Office*, and *Chelsea J. Fulton*, for respondent Donald Siegfried.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Honda of America Mfg., Inc., has filed this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Donald Siegfried ("claimant") and to find that he is not entitled to PTD compensation.

{¶ 2}   The court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued a decision including findings of fact and conclusions of law, which is appended hereto.  The magistrate recommends denial of relator's request for a writ of mandamus because some medical evidence supports the commission's conclusion that claimant is permanently and totally disabled.  Relator filed objections to the magistrate's decision, and the matter is now before us for our independent review.

{¶ 3}   As the magistrate sets out more fully, claimant sustained multiple work-related injuries, three of which resulted in allowable workers' compensation claims: (1) a 1996 lumbar injury, (2) a 1997 rotator cuff injury, and (3) a 1999 claim for carpal tunnel syndrome.  Claimant first applied for PTD compensation in March 2009.  A staff hearing officer ("SHO") denied the claim on February 17, 2010, relying on reports which concluded claimant was capable of performing sedentary work with certain limitations.

{¶ 4}   Claimant's treating physician, Dr. Stephen Altic, wrote claimant's attorney that claimant was "permanently totally disabled from all gainful and remunerative employment."  (R. 246.)  The letter also described the resulting limitations of claimant's injuries, including "impaired range of motion of the lumbar spine, and chronic pain." (R. 246.)  In June 2012, claimant applied for PTD with respect to his 1996 lumbar injury only.  In support of his application, claimant submitted the March 13, 2012 letter from Dr. Altic.

{¶ 5}   On December 6, 2012, Stephen Phillips prepared an employability assessment on claimant.  Phillips opined that claimant's age was a disadvantage to employment and that training was not an option.  Ultimately, Phillips concluded claimant was an unlikely candidate for any sustained remunerative employment.  In October 2012, Dr. E. Gregory Fisher performed an independent medical examination on claimant.  Dr. Fisher concluded all claimant's allowed conditions had reached maximum medical improvement and he was capable of performing sedentary work with limitations.

{¶ 6}   Claimant's PTD application was heard before an SHO on January 10, 2013. Relying on the medical report of Dr. Altic, the SHO found claimant was entitled to PTD compensation.  Relator filed a request for reconsideration which the commission granted, and then vacated the SHO's order awarding PTD compensation.  The commission then

reviewed and considered all the evidence of record. Relying on the medical reports of Drs. Altic and Fisher, as well as the vocational report of Phillips, the commission found claimant was entitled to an award of PTD compensation. Thereafter, relator filed this mandamus action.

{¶ 7} Relator sets forth two objections to the magistrate's decision:

> [I.] Competent medical evidence supports that [claimant] is incapable of sedentary work.

> [II.] The Commission properly considered the [*State ex rel Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987)] factors to its vocational analysis.

{¶ 8} In its first objection, relator contends the magistrate erred by finding competent medical evidence supported the commission's decision. Specifically, relator asserts Dr. Altic's report is insufficient as a matter of law because it is a "conclusory recitation" of conditions allowed for previous claims and provides no analysis of claimant's limitations. We disagree.

{¶ 9} As explained in the magistrate's decision, under Ohio Adm.Code 4121-3-34(C)(1), an application for PTD must be "accompanied by medical evidence from a physician * * * that supports an application for permanent total disability compensation." Further, the medical evidence must "provide an opinion that addresses the injured worker's physical and/or mental limitations resulting from the allowed conditions in the claim(s)." Where the medical evidence establishes that a claimant's PTD is solely a result of the allowed conditions, the commission may grant PTD compensation on that basis alone. *State ex rel. Hopkins v. Indus. Comm.*, 70 Ohio St.3d 36 (1994).

{¶ 10} Further, "the commission is the exclusive evaluator of factual evidence in determining whether an individual is entitled to compensation." *State ex rel. Letcher v. Keco Industries, Inc.*, 10th Dist. No. 07AP-151, 2008-Ohio-1907, ¶ 6, citing *State ex rel. Cherryhill Mgt., Inc. v. Indus. Comm.*, 116 Ohio St.3d 27, 2007-Ohio-5508, ¶ 13. As long as there is some evidence supporting the commission's decision, this court must defer to the commission's judgment. *State ex rel. Athey v. Indus. Comm.*, 89 Ohio St.3d 473, 475 (2000), citing *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000).

{¶ 11} As quoted above, and explained fully in the magistrate's decision, Dr. Altic's report specifically addressed claimant's physical limitations resulting from his allowed claim, noting the "impaired range of motion" and "chronic pain." (R. 246.) Dr. Altic concluded, based on his limitations, that claimant is not capable of sustained remunerative employment. Therefore, the commission's decision granting claimant PTD compensation was based on some medical evidence and was not an abuse of discretion.

{¶ 12} Relator's second objection asserts the magistrate erred by concluding the commission did not perform a correct vocational analysis and, instead, relied on the vocational conclusions of Phillips.

{¶ 13} Because the commission relied on the medical evidence in Dr. Altic's report when determining claimant was permanently and totally disabled, we need not address the *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987), nonmedical factors. Consideration of nonmedical factors is not necessary when the claimant's "medical factors alone preclude sustained remunerative employment" and where " 'nonmedical factors will not render the claimant any more or less physically able to work.' " *State ex rel. Tradesman Internatl. v. Indus. Comm.*, 10th Dist. No. 13AP-122, 2014-Ohio-1064, ¶ 18, quoting *State ex. rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood*, 60 Ohio St.3d 38, 40 (1991).

{¶ 14} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration to relator's objections, we overrule both of relator's objections and adopt the magistrate's findings of fact and conclusions of law. Accordingly, we deny relator's request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

BROWN and CONNOR, JJ., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State ex rel. Honda of America Mfg., Inc.,    :

      Relator,    :

v.    :    No. 14AP-82

Industrial Commission of Ohio and    :    (REGULAR CALENDAR)
Donald Siegfried,
                              :

      Respondents.    :

                              :

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on July 25, 2014

---

*Vorys, Sater, Seymour and Pease LLP,* and *Robert A. Minor* and *Christopher C. Wager,* for relator.

*Michael DeWine*, Attorney General, and *Cheryl J. Nester*, for respondent Industrial Commission of Ohio.

*Philip J. Fulton Law Office,* and *Chelsea J. Fulton,* for respondent Donald Siegfried.

---

### IN MANDAMUS

{¶ 15} Relator, Honda of America Mfg., Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Donald Siegfried ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.

<u>Findings of Fact</u>:

{¶ 16} 1. During the course of his employment with relator, claimant filed claims for three separate injuries and his workers' compensation claims are allowed for the following conditions:

> 96-800022 (date of injury 11/01/1996): Acute lumbosacral strain, L4 radiculopathy; herniated nucleus pulposus L5-S1; herniated nucleus pulposus L4-L5; aggravation of pre-existing lumbar degenerative joint disease; aggravation of pre-existing lumbar degenerative disc disease and lumbar stenosis; herniated disc at the L3; and major depressive disorder.

> 97-635855 (date of injury 08/29/1997): Partial rotator cuff tear; right shoulder with impingement.

> 99-800964 (date of injury 11/30/1999): right lateral epicondylitis; right carpal tunnel syndrome; right radial tunnel syndrome.

{¶ 17} 2. In a letter dated June 6, 2008, Janet W. Bay, M.D., noted that claimant had been under her care for his 1996 work-related injury since 2003, had undergone two surgical procedures and continued to have on-going low back pain and right sciatica. She opined that claimant was permanently and totally disabled, stating:

> At this point, I believe Mr. Siegfried has reached maximal medical improvement from his two spinal operations. He has been left with chronic low back pain and right sciatica that will require medical treatment. Based on his chronic pain, I would consider him completely and permanently medically disabled from any type of labor. It is possible that he might be able to undergo some type of job retraining for electronics or some type of other lighter work, but he certainly is not physically capable of returning to work as a factory worker.

{¶ 18} 3. An independent medical evaluation was performed by Richard M. Ward, M.D. In his August 21, 2008 report, Dr. Ward noted the history of claimant's injuries, provided his physical findings upon examination, and opined that only considering the physical allowances, claimant had severe functional limitations and there really was no combination of sit, stand, walk options that would add up to a normal eight-hour work day. Dr. Ward also noted severe limitations on claimant's ability to use his right upper

extremity because of loss of motion and marked weakness of grip strength in his right hand. Ultimately, Dr. Ward opined that claimant was not capable of working to substantial gainful employment and should be awarded permanent total disability.

{¶ 19} 4. Claimant submitted an application for PTD compensation in March 2009. At the time, claimant was 63 years old, indicated that he had last worked in May 2003, and was receiving Social Security Disability payments. Claimant indicated that he graduated from high school and attended vocational school to become a barber. Claimant noted that he could read and perform basic math, and that he could write, but not well. It was Dr. Bay's report that he submitted in support of his PTD application.

{¶ 20} 5. On April 28, 2009, Mark E. Reynolds, M.D., evaluated claimant for his allowed psychological condition of major depression disorder, opined that claimant had an 8 percent impairment and his psychiatric condition would not, in and of itself, prevent him from being employed nor would it prevent him from participating in rehabilitation.

{¶ 21} 6. Lewis Seeder, M.D., examined claimant for his allowed physical conditions. In his May 7, 2009 report, Dr. Seeder noted the history of claimant's injuries as well as his treatment, provided his physical findings upon examination, and opined that claimant had a 16 percent impairment and was capable of performing sedentary work with the following restrictions: sit 6 to 8 hours; stand and walk 0 to 3 hours; lift, carry, push, pull or otherwise move up to 10 pounds 0 to 3 hours; claimant could occasionally climb stairs but not ladders; could occasionally use foot controls as well as crouch, stoop, bend, kneel, handle objects and reach over head at waist, knee, and floor level. Dr. Seeder noted that those restrictions were for claimant's right upper extremity only.

{¶ 22} 7. Claimant was examined by Joseph W. Duritsch, M.D. In his June 23, 2009 report, Dr. Duritsch identified the allowed conditions in claimant's claims, the information which he reviewed, and provided a historical account of claimant's injuries and treatment. Thereafter, Dr. Duritsch provided his physical findings upon examination, opined that claimant's allowed conditions had reached maximum medical improvement ("MMI"), determined that claimant had a 23 percent whole person

impairment which he attributed exclusively to claimant's back condition, and concluded that claimant could perform sedentary work.

{¶ 23} 8. Ralph E. Skillings, Ph.D., examined claimant for his allowed psychological condition. In his July 3, 2009 report, Dr. Skillings identified the medical records which he reviewed, presented his findings, opined that claimant's allowed psychological condition had reached MMI, that he had a 10 percent Class 2 mild impairment, and that he was capable of working.

{¶ 24} 9. Craig Johnston, Ph.D., CRC, prepared an employability assessment dated September 13, 2009. Dr. Johnston opined that claimant's age of 63 years was a neutral factor in his ability to secure future employment, that his possession of a high school diploma qualified him for most entry-level work activities, and that his work history was a vocational factor which provided him with transferable skills. Dr. Johnston concluded that claimant was capable of working with the restrictions noted in the medical records.

{¶ 25} 10. Because he had not considered claimant's allowed shoulder condition, Dr. Duritsch prepared an addendum report wherein he opined that claimant had a 34 percent whole person impairment, that his allowed conditions had reached MMI, and that he was capable of performing sedentary work provided he be limited to no reaching overhead on the right.

{¶ 26} 11. Claimant's application was heard before a staff hearing officer ("SHO") on February 17, 2010. The SHO relied on the medical reports of Drs. Seeder and Reynolds to conclude that claimant was capable of performing sedentary work. Having found that he was capable of performing sedentary work, the SHO considered the non-medical disability factors. Specifically, the SHO discussed and agreed with the vocational evaluation and assessment of Dr. Johnston who had concluded that claimant's age, education, and work experience were all positive vocational factors.

{¶ 27} 12. On March 13, 2012, claimant's treating physician Stephen Altic, D.O., sent claimant's attorney the following letter:

> This is in response to your 02/15/2012 letter. As you know, this gentleman sees me on a regular basis for this injury and its resultant significant multilevel lumbar disc problems. Given this gentleman's radicular complaints, impaired range

of motion of the lumbar spine, and chronic pain for the conditions allowed in this claim: 722.10, 724.4, 721.90, 722.52, and 724.02, in my medical opinion he is impaired by these conditions to the extent that he is permanently totally disabled from all gainful and remunerative employment.

{¶ 28} 13. Claimant completed and filed a second application for PTD compensation listing only the 1996 claim. On this application, claimant indicated that he could read, write, and perform basic math. (Previously, claimant indicated that he could write, but not well.)

{¶ 29} 14. Claimant was seen again by Dr. Seeder. In his August 10, 2012 report, Dr. Seeder listed the allowed conditions in all of claimant's claims, opined that those allowed conditions had reached MMI, concluded that claimant had a 9 percent whole person impairment (opined 16 percent in 2009), noted that there had been no changes in claimant's status, and again concluded that he was capable of performing work with the following limitations: sit 6 to 8 hours; stand and walk 0 to 3 hours; lift or carry up to 10 pounds 0 to 3 hours; (Dr. Seeder did not indicate how much claimant could push, pull, or otherwise move, but he previously had indicated less than 10 pounds 0 to 3 hours.); occasionally climb stairs but not ladders; occasionally use foot controls; crouch, stoop, bend, kneel, handle objects, and reach overhead at waist, knee, and floor level. These restrictions were for the right upper extremity only.

{¶ 30} 15. An independent medical examination was performed by E. Gregory Fisher, M.D. In his October 27, 2012 report, Dr. Fisher identified the allowed conditions in claimant's claims, provided claimant's medical history, identified the medical records which he reviewed, provided his physical findings upon examination, and concluded that claimant's allowed conditions had all reached MMI, assessed a 28 percent whole person impairment (23 percent of that was for claimant's allowed back condition), and opined that claimant was capable of performing sedentary work with the following restrictions:

He should have a weight limitation of 5 pounds frequently and 10 pounds occasionally. He should avoid bending and twisting at the waist level and avoid climbing ladders or stairs.

{¶ 31} 16. The record also contains a November 16, 2012 letter by Dr. Bay addressed to claimant's treating physician Dr. Altic.  In that letter, Dr. Bay explained why she believed additional surgery was necessary:

> [Relator] underwent a right L3 diskectomy and a re-fusion of L3 through 5 with new instrumentation. He did well from both these procedures and awakened feeling better, although he never was symptom-free and never was able to return to work.
>
> He comes now with progressive symptoms of burning and pain in his legs, weakness requiring a cane to walk, and some numbness in his lower extremities, as well.
>
> His MRI scan does show adjacent segment disease with L2-3 stenosis just above the site of his upper pedicle screws.
>
> I do believe he has mechanical cauda equina compression as a source of his pain, numbness, and weakness. I have recommended a decompressive laminectomy at L2 with extension of his fixation and fusion from L2 down to L5. Indications and risks were discussed with him. I certainly cannot guarantee that he would be pain-free, but I think we can improve his neurological complaints and hopefully his pain to a degree, as well.
>
> As doctor of record, I would appreciate it if you would obtain consent from the Industrial Commission for this procedure. Please let me know if you need any further information.

{¶ 32} 17. An employability assessment was prepared by Stephen Phillips, CRC, CDMS, dated December 6, 2012.  In his report, Mr. Phillips indicated that claimant had a (att. 19) "70% permanent partial disability award from BWC."  (This information is not provided elsewhere in the stipulation of evidence and could not be verified.)  Mr. Phillips noted that there was no documentation that claimant was aware of or turned down an offer of vocational rehabilitation services.  Further, Mr. Phillips found that claimant's age of 67 was a disadvantage, that training was not an option despite his high school education, and that he had no transferrable skills.  As such, Mr. Phillips concluded that claimant was a very unlikely candidate for any sustained remunerative employment.

{¶ 33} 18. Dr. Johnston rendered a second employability assessment. Dr. Johnston concluded that claimant's age was a potential barrier, that his high school diploma would qualify him for most entry-level work, that his work history was an asset to his ability to secure future employment as it provided him with certain transferable skills. Dr. Johnston ultimately concluded that claimant was capable of working.

{¶ 34} 19. Claimant's application was heard before an SHO on January 10, 2013. The SHO relied upon the medical report of Dr. Altic to find that claimant was entitled to an award of PTD compensation, specifically stating:

> The medical evidence on file supports a finding that the Injured Worker underwent a laminectomy subsequent to the 2010 denial of a permanent and total disability application. The Staff Hearing Officer finds that since that finding in 2010 and as a result of the newly allowed conditions and surgical procedures the Injured Worker has suffered a significant worsening of his condition. Dr. Altic has stated that the Injured Worker's radicular complaints, his impaired range of motion along with chronic pain has resulted in the permanency of the condition and his inability to return to gainful employment.

{¶ 35} 20. Relator filed a request for reconsideration setting forth what relator believed to be the following clear mistakes of fact and law:

> [T]he staff hearing officer:
>
> - Recited the incorrect conditions allowed and disallowed in Claim No. 96-800022 (the only claim in which PTD compensation was awarded);
>
> - The hearing officer incorrectly found new and changed circumstances since the denial of an earlier PTD application. Specifically, she cited to a surgical procedure that she stated took place since the denial of an earlier application for PTD compensation. The surgery actually took place prior to the previous denial of PTD benefits;
>
> - The six-line report of Dr. Altic (the sole support for the award) lists conditions in Claim N0. 96-800022 which have not been allowed;

- Dr. Altic has authored a request that the claimant undergo surgery, which is inconsistent with a finding of PTD; and

- There were no meaningful new and changed circumstances since the denial of the previous application and the awarding of PTD compensation constitutes a mistake of law.

{¶ 36} 21. Claimant filed a memorandum contra asserting there was no requirement that he establish new and changed circumstances, that the SHO only considered the allowed conditions, and there was no abuse of discretion in granting him PTD compensation.

{¶ 37} 22. In an interlocutory order, the commission set relator's request for reconsideration for hearing.

{¶ 38} 23. Dr. Bay authored another letter dated July 2, 2013, stating:

> Mr. Donald Siegfried has been under my care sine 2003 for spinal pathology dating back to a work-related injury suffered in 1996. In 2003, he underwent a decompressive laminectomy of L4-5 with a left discectomy. He did well thereafter until 2005, when he developed adjacent segment disease with a herniated disk on the right at L3-4. His fusion was extended up to include the L3 level.
>
> He did well for many years until this year when he developed recurrent pain, and earlier this year he underwent an extension of his fusion up to include the L2 level with an interbody graft at L2-3 as well. At this point, he is fused from L2 through L5.
>
> All of his surgical procedures are flow-through from that original injury back in 1996, which was work-related. He has been left with some chronic pain in his back and leg. He does get around with a cane.
>
> In my opinion, he is completely and permanently medically disabled in regard to his back. Should you have any further questions, please feel free to contact this office.

{¶ 39} 24. Relator's request for reconsideration was heard before the commission on July 9, 2013.

{¶ 40} 25. The commission granted relator's request for reconsideration and vacated the SHO's order from the January 10, 2013 hearing (mailed January 26, 2013). Thereafter, the commission relied on the medical reports of Drs. Altic and Fisher and the vocational report of Mr. Phillips to find that claimant was entitled to an award of PTD compensation. Specifically, the commission order states:

> It is the order of the Commission that the Injured Worker's Application for Permanent Total Disability filed 06/15/2012 is granted. Payment of permanent total disability compensation is to start 03/13/2012, the date of the report from Stephen Altic, D.O., which is the first report since the previous denial hearing of 02/17/2010, to opine on the issue of permanent total disability.
>
> The cost of this award is apportioned 100% in claim 96-800022, which is the only claim considered by Dr. Altic in his letter dated 3/13/2012, specifically finding permanent total disability.
>
> The Commission finds the Injured Worker is unable to perform, or be retrained for, any sustained remunerative employment as a result of the allowed conditions in claim number 96-800022. This decision is based on the 03/13/2012 report of Dr. Altic, who opined the Injured Worker was unable to perform sustained remunerative employment, and the 10/27/2012 opinion of E. Gregory Fisher, M.D., that the Injured Worker is capable of less than sedentary work activities. In his examination report of 10/27/2012, Dr. Fisher found the Injured Worker had to avoid bending and twisting at waist level, avoid climbing stairs or ladders, lifting no more than five pounds on a frequent basis and no more than ten pounds on an occasional basis.
>
> The Commission also relies upon the 12/06/2012 report from Stephen Phillips CRC, CDMS. Mr. Phillips found that the Injured Worker's age of 67 to be a disadvantage in seeking work, especially in low strength jobs, and retraining to be difficult given the Injured Worker's need to change positions and the length of time since his last academic experience. Given the Injured Worker's age and current physical limitations, Mr. Phillips opined that the Injured Worker "is limited in his ability to compete in today's job

market" and that he is a very "unlikely candidate for any sustained, remunerative employment."

{¶ 41} 26. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 42} Relator asserts that the commission abused its discretion by: (1) concluding that claimant was permanently and totally disabled from a medical perspective where there is no competent medical evidence in the record to support that conclusion and the evidence relied upon by the commission indicates that claimant is capable of sedentary work, and (2) relying solely upon the vocational report of Mr. Phillips without conducting its own vocational analysis.

{¶ 43} The magistrate finds that the commission did not abuse its discretion when it: (1) used Dr. Altic's medical report to set the start date for PTD compensation and relied on the medical report of Dr. Fisher to find that claimant was capable of sedentary work, and (2) relied on Mr. Phillips' vocational analysis.

{¶ 44} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 45} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 46} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 47} Relator first argues that Dr. Altic's report is conclusory and does not offer any scientific or medical analysis of the effect of the impairment on claimant. Relator cites this court's decision in *State ex rel. Findlay Indus. v. Indus. Comm.,* 10th Dist. No. 09AP-52, 2009-Ohio-4384 and Ohio Adm.Code section 4121-3-34(C)(1). For the reasons that follow, the magistrate finds that this case and code section do not require that Dr. Altic's report be removed from evidentiary consideration.

{¶ 48} In *Findlay Indus.,* this court adopted the decision of its magistrate including the determination that the report of Dr. Miller did not constitute some evidence upon which the commission could rely to award PTD compensation to Karen Fuson. Specifically, this court stated:

> First, turning to the report of Dr. Miller, the magistrate notes that relator is correct in pointing out that some of the statements in his report are not given within a reasonable degree of medical certainty or probability. The following statements are problematic: (1) "the patient is * * * unlikely to be able to sustain employment based on her somatic style, persistent pain, and fixation / over-identification with the sick rule"; (2) "[m]y guess is that she will never be able to return to work based on the combination of pain and emotional distress"; (3) "I do not think that she will be able to sustain any sort of employment based on her vacillating agitation, somatic style and focus, irritability, and sense of feeling disabled"; and (4) "I believe that her vacillating

symptomatology supports the notion that she will remain permanently disabled."

The above four sentences are problematic because they are prefaced with words such as "unlikely," "my guess," "I do not think," and "I believe." The use of those words does not demonstrate any certainty or probability and, for those reasons, Dr. Miller's report is compromised. Dr. Miller also stated that "[t]he claimant is not capable of full-duty work"; however, nowhere in Dr. Miller's report did he address the psychological limitations resulting from claimant's allowed psychological condition. As such, Dr. Miller's report does not comply with the requirements of Ohio Adm.Code 4121-3-34(C)(1) which provides, in pertinent part:

Each application for permanent total disability shall be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition, that supports an application for permanent and total disability compensation. * * * The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the injured worker's physical and/or mental limitations resulting from the allowed conditions in the claim(s).

For these reasons, Dr. Miller's report does not constitute some evidence upon which the commission could properly rely to support an award of PTD compensation.

*Id.* ¶ 26-28.

{¶ 49} Dr. Altic's report does not present the same problems which Dr. Miller's report presented. The opinions in Dr. Miller's report were not given within a reasonable degree of medical certainty or probability. Instead, Dr. Miller's opinions were inconclusive and did not support an award of PTD compensation. By comparison, Dr. Altic's report specifically indicates that claimant's allowed conditions render him permanently and totally disabled.

{¶ 50} Relator also contends that Dr. Altic's report fails to satisfy the requirements of Ohio Adm.Code 4121-3-34(C)(1), above quoted because he fails to address claimant's limitations. However, the magistrate specifically notes that Dr. Altic was claimant's physician of record and specifically opined that given claimant's

radicular complaints, impaired range of motion of the lumbar spine, and chronic pain, he was incapable of performing some sustained remunerative employment. The magistrate finds that Dr. Altic's statements are sufficient to satisfy the minimum requirements of the Ohio Administrative Code. As such, Dr. Altic's report constitutes some evidence upon which the commission could rely to find that claimant was permanently and totally disabled.

{¶ 51} Relator also contends that the commission abused its discretion by relying on the report of Dr. Fisher because the commission characterized Dr. Fisher's report as concluding that claimant was capable of less than sedentary activities. Relator contends that this is a clear mistake of fact. Relator asserts that Dr. Fisher's limitations on claimant's ability to lift no more than five pounds on a frequent basis and no more than ten pounds on an occasional basis fall squarely within the definition of sedentary employment. Relator does not contend that there is any flaw in Dr. Fisher's report. Instead, relator argues that the commission abused its discretion when it determined that he opined that claimant was capable of performing less than sedentary work.

{¶ 52} Ohio Adm.Code 4121-3-34(B)(2)(a) states:

> "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 53} When reading the above definition for sedentary work, it must be remembered that a job is classified as "sedentary" provided that the job does not require a person to lift more than ten pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects. Not all sedentary jobs require a person to lift ten pounds of force occasionally; however, a job cannot be classified as sedentary if it requires one to exert more than ten pounds of force occasionally.

{¶ 54} Relator is correct to note that the lifting restrictions imposed by Dr. Fisher fit within the definition of sedentary work. While Dr. Fisher did put additional limitations on claimant, specifically indicating that he refrain from bending and twisting at waist level, those restrictions do not necessarily indicate that claimant is capable of less than sedentary work. It must be remembered that the definition of sedentary work identifies the maximum level of exertion which a job can have and still be considered sedentary. Here, the magistrate does not find the commission's characterization of Dr. Fisher's report to be fatal.

{¶ 55} Arguably, the commission overstated Dr. Fisher's report slightly. However, even if Dr. Fisher's report is removed from evidentiary consideration, the report of Dr. Altic still constitutes some evidence upon which the commission could rely to find that, solely as a result of the allowed conditions in his claim, claimant was permanently and totally disabled. If Dr. Fisher's report remains in evidentiary consideration, the magistrate notes that the commission also relied on the employability assessment of Mr. Phillips. While it is true that the commission is considered the vocational expert and does not need to consider or rely on any vocational expert, if vocational reports extensively discuss and analyze all relevant non-medical factors, the commission does not need to repeat the analysis in its order. *See State ex rel. Hunt v. Indus. Comm.*, 10th Dist. No. 94APD11-1659 (Sept. 28, 1995) (memorandum decision) and *State ex rel. Freeman v. Indus. Comm.*, 10th Dist. No. 97APD02-251 (Mar. 17, 1998) (memorandum decision). To the extent that relator also argues that this court should apply the holding from *Findlay Indus.*, discussed relative to Dr. Altic's report, the magistrate disagrees. The requirement that physicians must state their opinions within a reasonable degree of medical certainty does not extend to opinions rendered by vocational specialists.

{¶ 56} Based on the foregoing, it is this magistrate's decision that the commission did not abuse its discretion when it granted permanent total disability compensation to claimant Donald Siegfried and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).